**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4829
_____

MARY E. GLOVER, individually and on behalf of other similarly situated former and
current homeowners in Pennsylvania,
Appellant

v.

WELLS FARGO HOME MORTGAGE; GOLDMAN SACHS MORTGAGE
COMPANY; MARK J. UDREN; UDREN LAW OFFICES, P.C.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:08-cv-00990)
District Judge: Hon. Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2015
_____

Before: SHWARTZ, KRAUSE, and GREENBERG, <u>Circuit Judges</u>.

(Filed: October 14, 2015)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Mary Glover sued Wells Fargo Home Mortgage ("Wells Fargo"), Goldman Sachs Mortgage Company ("Goldman Sachs"), and Mark J. Udren and Udren Law Offices, P.C. ("Udren") for improperly charging her fees in connection with her mortgage loan. The District Court approved the appointment of a special master to supervise discovery, denied motions Glover's for additional discovery and to amend her class definition, and dismissed her claims against Wells Fargo and Goldman Sachs under Fed. R. Civ. P. 12 and 56. Glover appeals from the District Court's orders addressing these issues. We will affirm.

I.

A.   Factual Background

On August 2, 2002, Glover obtained a $9,997 residential mortgage loan from Washington Mutual Bank, F.A. ("WaMu") to purchase property in Clairton, Pennsylvania. The mortgage obligated Glover to make timely payments and, if she failed to do so, required her "to pay costs and expenses including reasonable and customary attorneys' fees" associated with collecting the unpaid amounts. App. 199. In March 2005, Glover defaulted on her loan. WaMu notified Glover that it would foreclose on her home unless she paid amounts equaling her three overdue monthly payments (in addition to late fees). Glover asked WaMu to modify her loan repayment schedule and WaMu agreed to postpone Glover's loan payments until April 2006. Meanwhile, in September

2

2005, Goldman Sachs purchased WaMu's loan to Glover, exclusive of the servicing rights, and WaMu continued to collect the loan payments.

Glover remained in default, and in April 2006, WaMu's counsel, Udren, filed a foreclosure complaint against her for $12,652.36 in unpaid principal, interest, costs, and attorney's fees. In June 2006, WaMu offered Glover a loan modification agreement, which, among other things, recalculated Glover's monthly required payment to $170.31 and required that Glover immediately pay WaMu $3,696 for "foreclosure fees & costs." Supp. App. 2648. Glover accepted the offer, and began making the $170.31 monthly payments to WaMu, even though WaMu never executed the 2006 LMA or formally modified the terms of the loan. She did not pay WaMu the $3,696, and WaMu never repeated its demand for that amount.

On December 1, 2006, WaMu transferred its servicing duties to Wells Fargo. Glover made her partial mortgage payments to Wells Fargo but did not pay the outstanding deficiency.

By letter dated January 4, 2008, Wells Fargo conveyed a written "loan modification offer" (the "2008 LMA"), which Glover accepted. Among other things, the 2008 LMA increased Glover's unpaid principal balance from $9,508.36 to $12,152.02 and lengthened her repayment period by six years. The 2008 LMA also contained a "[b]reakdown of [a]mounts [d]ue," including a $1,571.02 charge for "Corp Recov/Title/Mod Fees/Atty/FC/BPO/Appraisal." Supp. App. 2612. Glover has

3

presented no evidence showing that these items were incorporated into her principal loan balance or that Wells Fargo collected foreclosure-related attorney's fees from her.

Glover brought her loan out of default on March 5, 2008 and the foreclosure complaint was withdrawn on March 25, 2009.

B.    Procedural History

On June 9, 2010, Glover filed a 17-count Second Amended Class Action Complaint (the "SAC") for the unlawful collection of attorney's fees and other foreclosure-related charges relating to her mortgage.  Wells Fargo and Goldman Sachs moved to dismiss portions of the SAC under Rule 12(b)(6); their motions were granted in part and denied in part.  The District Court also dismissed all of Glover's claims against Udren and certified the dismissal of her claims against Udren.[1]  The District Court also approved a stipulation that Glover and Udren entered (the "Stipulation"), in which they agreed to provide initial disclosures under Rule 26(a)(1) and Udren warranted that it had "not destroyed any documents" relating to Glover's (or the putative class's) claims against the defendants.

Discovery began in or about June 2011.  Between August 11, 2011 and September 8, 2011, the parties filed approximately sixteen discovery-related motions, twelve of which were filed by Glover.  During a September 8 status conference, the Magistrate Judge told the parties that "continuation of th[eir] outrageous motions practice would

---

[1] We affirmed the dismissal of Glover's claims against Udren.  See Glover v. F.D.I.C., 698 F.3d 139 (3d Cir. 2012).

4

result in those discovery matters being referred to a special master." App. 1370. Notwithstanding the Magistrate Judge's admonition, the parties filed an additional twelve discovery motions between September 9 and October 12, prompting the Magistrate Judge to order on October 12 that the parties "confer and see if they can agree on a special master to whom all such matters will be referred; if they fail to do so, the Court will make its own selection of such special master." App. 1370. The parties selected a Special Master[2] and the Magistrate Judge entered an order on October 18 appointing him to handle "discovery matters" and directing that his "fees will be paid . . . 50% by plaintiff and 50% by defendants" (the "50/50 fee allocation"). App. 1417–18.

Glover lodged numerous objections to the Special Master appointment, including an objection to the 50/50 fee allocation, which the Magistrate Judge overruled on October 20. Glover then filed with the District Judge objections to the appointment order and fee allocation. Despite her protests, Glover conceded that there was "a need" for a Special Master to assist with "ESI discovery," App. 1448, and that despite her "low income," App. 1451, she was prepared to contribute "up to $50,000.00" toward the Special Master's fees, App. 1808.

The District Court responded by order dated November 9, 2011, directing the Magistrate Judge to issue a more "detailed" order containing the terms of the appointment, and overruling Glover's objections to the Magistrate Judge's: (1) authority

---

[2] The parties' submission selecting the Special Master noted that Glover "will be filing Objections to th[e] Court's October 12, 2011 Order." Glover v. Wells Fargo Home Mortg., No. 2:08-cv-00990 DWA RCM (W.D. Pa. Oct. 18, 2011), ECF No. 370.

to appoint the Special Master; (2) referral to the Special Master of all discovery disputes; and (3) the 50/50 fee allocation, finding that it "indicates a thoughtful consideration of the equities, balanced against the need to protect against unreasonable expense or delay." App. 13–14. The Magistrate Judge then issued an "Amended Order" on November 9, 2011, confirming the appointment to handle discovery and reiterating the fee allocation, App. 1487.

After we denied Glover's petition for a writ of mandamus challenging the District Court's Special Master appointment order, Glover's counsel stated during a September 24, 2012 status conference that Glover would not proceed with any further discovery before the Special Master, prompting the Magistrate Judge to deem discovery complete. The Magistrate Judge had set October 2, 2012 as the deadline for her to file her class certification motion and offered to allow her to file an "amended" submission concerning her putative class. App. 1886. Glover rejected the offer but did file her Motion for Class Certification by the court-ordered deadline (the "Initial Class Motion").[3] One month later, she filed a separate motion to certify a "limited class of homeowners" (the "Limited Class Motion"), App. 1777, redefining the proposed class in a way she claimed would "obviat[e] the need for a special master," App. 1884. Glover also filed a motion to enforce the Stipulation with Udren (the "Motion to Enforce"), seeking documents she

---

[3] The District Court subsequently denied Glover's Initial Class Motion, which Glover does not challenge on appeal.

6

contended "Udren agreed to produce [and that] are quite relevant to [Glover's] now-pending Motion for Class Certification of a Limited Class." App. 1808.

The Magistrate Judge denied Glover's Limited Class Motion and Motion to Enforce. With respect to the Limited Class Motion, the Magistrate Judge held that Glover had "relinquished her right to re-characterize her class definition" when her counsel represented that she did not seek amended briefing, and because the motion was filed one month after the October 2 deadline. App. 1886. In denying Glover's Motion to Enforce her Stipulation with Udren, the Magistrate Judge noted that Glover had already sought the same discovery from Udren through two prior motions to compel, which were denied, and that the discovery period was now closed due to Glover's counsel's representation at the September 24 status conference that she would not participate in further discovery. The District Court affirmed both orders.[4]

The District Court ultimately granted summary judgment to Goldman Sachs and Wells Fargo on Glover's remaining claims and, in doing so, denied Glover's request for further discovery under Rule 56(d). Glover appeals.

## II.

Glover appeals the District Court's: (A) appointment of the Special Master; (B) denial of discovery under Rule 56 and her Motion to Enforce the Stipulation with Udren;

---

[4] We dismissed Glover's initial appeal of the order denying her Motion to Enforce for lack of jurisdiction. See Glover v. F.D.I.C., 543 F. App'x 149 (3d Cir. 2013) (not precedential).

(C) dismissal of her claims against Goldman Sachs and Wells Fargo; and (D) denial of her Limited Class Motion.  We will address each in turn.

A.      Appointment of the Special Master

We first address Glover's four challenges to the District Court's appointment of the Special Master.  As we explain below, none of these challenges have merit and the appointment was within the District Court's discretion.[5]

1.      Scope of the Special Master's Duties under Rule 53(a)

We begin with Glover's contention that the appointment lacked a proper purpose under Rule 53(a).  The purpose of a special master is "to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause."  La Buy v. Howes Leather Co., 352 U.S. 249, 256 (1957) (internal quotation marks omitted); Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 441 (3d Cir. 2005).  To this end, Rule 53(a)(1)(C) authorizes appointment of a master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  Fed. R. Civ. P. 53(a)(1).  While the 1957 LaBuy Court viewed docket congestion, issue complexity, and the time consuming nature of a case as not justifying the appointment of a Special Master, 352 U.S. at 259, the 2003 version of Rule 53 reflects the changing practices in using Special Masters.  As the Advisory Committee specifically recognized, "[t]he appointment of masters to participate in pretrial

---

[5] We apply the abuse-of-discretion standard when reviewing the appointment of a special master.  See Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 440 (3d Cir. 2005).

proceedings has developed extensively over the last two decades" to aid district courts in "managing complex litigation." Fed. R. Civ. P. 53 advisory committee's note to 2003 amendment.

The appointment here concerned a pretrial matter that could not be effectively or timely addressed by the Magistrate Judge or District Judge. The record shows the parties' clear inability to promptly or efficiently resolve their discovery disputes,[6] and their aggressive motion practice. Discovery began in or about June 2011, and by early October, Glover had filed twenty-one discovery-related motions. These motions in turn prompted numerous counter-motions by the various defendants for protective orders and two motions to compel. Glover herself at one point described the situation as a "quagmire with respect to non-ESI and ESI discovery." App. 1448. While the appointment orders lack explicit findings that the parties' behavior constituted a "pretrial . . . matter[] that cannot be effectively and timely addressed," Fed. R. Civ. P. 53(a)(1)(C), and it is a better practice to include such a finding when appropriate, we have little trouble seeing from this record that the numerous disputes and the vitriol with which they were presented impeded the District Court and Magistrate Judge from efficiently managing discovery and ensuring the prompt resolution of the case as contemplated by Fed. R. Civ. P. 1. Thus, the District Court did not abuse its discretion in endorsing the appointment of a Special Master to handle discovery disputes in this case.

---

[6] For example, relations between counsel had broken down to the point that Glover's counsel insisted on speaking to a specific attorney about the case.

### 2. Notice and Opportunity to Be Heard

We next address Glover's contention that she lacked notice and an opportunity to be heard about the appointment. Rule 53(b) requires a court to "give the parties notice and an opportunity" to object to the appointment of a special master. Fed. R. Civ. P. 53(b). Here, Glover received notice of the Magistrate Judge's intent to appoint a Special Master and had (and seized) numerous opportunities to object to the appointment. After Glover filed no fewer than twelve discovery-related motions between August 11 and September 8, 2011, the Magistrate Judge notified the parties that he was contemplating referring all discovery matters to a Special Master. Moreover, following the Magistrate Judge's October 12 order directing the parties to agree on a Special Master, Glover specifically represented that she intended to file objections to the appointment. Thus, she was on notice of the appointment and was prepared to object to it.

Glover was also heard many times about the appointment. Glover filed no fewer than six pleadings embodying various objections to the appointment, App. 100 (ECF Nos. 395, 398). Both the Magistrate Judge and District Court considered her objections. For example, the District Court acknowledged Glover's complaints that the Magistrate Judge's prior orders "did not comport with" Rule 53, App. 10, and, in response, directed the Magistrate Judge to amend his order to "include the more detailed requirements [of] Rule 53(b)," App. 12. Thus, Glover had notice of the Appointment Order and opportunities to object to it, and we will not disturb the appointment on this basis.

### 3. 50/50 Fee Allocation

10

The District Court also did not abuse its discretion in approving the 50/50 fee allocation.  See Latin Am. Music Co. v. Archdiocese of San Juan of Roman Catholic & Apostolic Church, 499 F.3d 32, 43 (1st Cir. 2007) (citing Aird v. Ford Motor Co., 86 F.3d 216, 221 (D.C. Cir. 1996)).  Rule 53(g) requires a court to "allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master."  Fed. R. Civ. P. 53(g)(3).  Here, the District Court found the Magistrate Judge's recommendation that the 50/50 fee allocation reflected "a thoughtful consideration of the equities, balanced against the need to protect against unreasonable expense or delay," and consideration of "the extent to which any party is more responsible than the other party for the reference," App. 13–14.  These conclusions were reasonable as both sides were in need of close supervision to ensure discovery moved forward.

Moreover, the record supported requiring Glover to share the costs.  In her SAC, Glover represented that she could "acquire the financial resources to litigate this action" and that her counsel would "advance all reasonable costs" for that purpose.  App. 166.  Furthermore, Glover said that she "ha[d] the necessary funds" to pay "up to $50,000.00" of the Special Master's fees for ESI discovery.  App. 1808.  Although neither the Magistrate Judge nor the District Court made extensive findings on "the nature and amount of the controversy" or the relative "means" of the parties in this case, Fed. R. Civ. P. 53(g)(3)—an obligation we remind district courts to discharge faithfully via explicit

11

findings or a written order—we find no abuse of discretion given the considerable breadth of Glover's SAC, her overly broad and aggressive pursuit of discovery, and her counsel's representation that resources were available to fund this class action case.[7]

4.    Judicial Authority for the Appointment

We next review, de novo, the authority of the Magistrate Judge to appoint the Special Master. Beazer East, 412 F.3d at 437 n.9. Rule 72 provides that a magistrate judge may "issue a written order stating [his or her] decision" on "a pretrial matter not dispositive of a party's claim or defense [that has been] referred to a magistrate judge to hear and decide." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A) (permitting a court to designate a magistrate judge to "hear and determine any pretrial matter pending before the court" with enumerated exceptions).

As a preliminary matter, we reject Glover's contention that the appointment concerned a "dispositive" matter. Rule 72 describes a dispositive matter as one that is "dispositive of a party's claim or defense," Fed. R. Civ. P. 72(a), such as motions for injunctive relief or for dismissal. 28 U.S.C. § 636(b)(1)(A). Discovery matters are

---

[7] We are sensitive to the concerns the amici raises about the possible constitutional dimensions of a court's failure to comply with its obligation under Rule 53 to consider the parties' means when determining whether to appoint a Special Master. Those concerns, however, are not present here given the representations of Glover's counsel, her stated willingness to pay up to $50,000 to the Special Master to resolve ESI discovery disputes, and the ability to seek reimbursement of the costs if she prevailed in this litigation. See Fed. R. Civ. P. 54(d)(1). In addition, Rule 53(g)(3) provides a means for the court to revisit the allocation after the Special Master rules. This provides, among other things, a means to shift expenses if it is determined, for example, that one party has taken frivolous or bad faith positions that have unnecessarily increased the costs associated with proceeding before the Special Master.

generally nondispositive. Arista Records, LLC v. Doe 3, 604 F.3d 110, 116 (2d Cir. 2010). Here, the Magistrate Judge, with the approval of the District Judge, tasked the Special Master only to address such nondispositive matters. Moreover, Glover's argument that the 50/50 fee allocation was "functionally dispositive" by "erect[ing] an insurmountable financial barrier" to her "continuing with the litigation," Opening Br. 52, fails, particularly since, as already noted above, she represented to the District Court her ability to pay up to $50,000 to proceed before a Special Master. Put simply, her dissatisfaction with the 50/50 fee allocation and her response to it does not make the appointment order itself one that disposes of the merits of her claims.

We likewise reject Glover's contention that the Magistrate Judge lacked authority from the District Court to appoint the Special Master. Here, the District Court referred all discovery matters to the Magistrate Judge, and the Magistrate Judge in turned appointed the Special Master to address discovery matters. Thus, "it is clear from the context" of the record that the Magistrate Judge's authority included discovery, see Beazer East, 412 F.3d at 437, and that the Special Master's appointment flowed from that authority. Furthermore, an Article III judge reviewed and endorsed the appointment, see NLRB v. Frazier, 966 F.2d 812, 816 (3d Cir. 1992), and any recommendation from the Special Master would be reviewed by one or more judicial officers. See United States v. Bolivar–Munoz, 313 F.3d 253, 256 (5th Cir. 2002) ("[W]hen analyzing a challenge to the district judge's delegation of authority to a magistrate judge pursuant to § 636(b), the dispositive question is whether the duty assigned to a magistrate judge is subject to

13

meaningful review by a district judge."). Thus, the Magistrate Judge had the authority to appoint a Special Master to review these discovery disputes and for this additional reason we uphold the appointment of the Special Master.

B.      Request for Additional Discovery under Rule 56(d)

As a protest against the Special Master's appointment, Glover declined to participate in discovery in accordance with the scheduling order and the Magistrate Judge deemed discovery closed. She nonetheless attempted to use Rule 56(d) as an avenue to obtain discovery. Rule 56(d) provides a means for a party opposing summary judgment to seek additional time to obtain discovery needed to respond to the motion. Pa. Dep't of Pub. Welfare v. Sebelius, 674 F.3d 139, 157 (3d Cir. 2012). Such a party must "submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling v. City of Phila., 855 F.2d 136, 139–40 (3d Cir. 1988). The party must also adequately explain any "lack of diligence" in failing to obtain the information sought. Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir. 1989). Except in rare cases, "failure to comply with [Rule 56(d)] is fatal to a claim of insufficient discovery on appeal." Bradley v. United States, 299 F.3d 197, 207 (3d Cir. 2002).[8]

Glover's declaration fails to show the diligence that Rule 56(d) requires. Glover concedes that "a primary reason" this discovery was unavailable was her refusal to

_____

[8] "We review the [D]istrict [C]ourt's response to a Rule 56(d) declaration for abuse of discretion." Shelton v. Bledsoe, 775 F.3d 554, 559 (3d Cir. 2015).

participate in discovery following the appointment of the Special Master. Glover chose not to avail herself of the Special Master's services to resolve discovery issues and did not attempt to serve narrowly tailored discovery demands and hence she has not shown a diligent effort was made to obtain the information sought. Because Glover failed to adequately explain her lack of diligence, the District Court "acted within the permissible bounds of its discretion when it ruled on [Wells Fargo and Goldman Sachs's] summary judgment motion[s] on the record before it." Dowling, 855 F.2d at 141.

### C. Glover's Motion to Enforce

Glover also attempted to secure discovery outside of the normal route by attempting to assert that her Stipulation with Udren was an "agree[ment] to the timely production of all class documents" from Udren under Rule 26, Opening Br. 56, and that the District Court "abdicat[ed] [its] Article III responsibility" by refusing to enforce it, id. at 58.

The District Court did not abuse its discretion in declining to grant the relief Glover sought.[9] The Stipulation required Udren to produce its Rule 26 disclosures, and

---

[9] We reject Glover's contention that our review of this issue is plenary. Our Court has already opined that the Stipulation is linked to discovery. See Glover v. F.D.I.C., 543 F. App'x 149, 151 (3d Cir. 2013) (not precedential). As a result, orders concerning its enforcement are reviewed for abuse of discretion and will not be disturbed "absent a showing of actual and substantial prejudice." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010).

Glover does not dispute that Udren made its required Rule 26 disclosures regarding her claims against Udren. She contends that Udren "breached the Stipulation" by failing to provide unidentified "class discovery" that the Stipulation allegedly "guarantee[d]" her. Opening Br. 16–17. The Stipulation, however, required Udren only to preserve documents related to foreclosure cases that existed in Udren's office on October 14, 2009 and, unlike the Rule 26(a) disclosure obligation, it did not require their automatic production. Furthermore, as we previously noted, the Stipulation "did not contemplate broad discovery under Rule 26(a) from Udren related to the remaining defendants." Glover v. F.D.I.C., 543 F. App'x 149, 151–52 (3d Cir. 2013) (not precedential). Given the plain language of the Stipulation coupled with Glover's repeated attempts to obtain the same information via multiple discovery motions and refusal to proceed with discovery before the Special Master, we find no abuse of discretion in the denial of the Motion to Enforce, and no prejudice to Glover by the denial.

D.     Dismissal of Claims[10]

---

[10] We exercise plenary review of an order granting a motion to dismiss under Rule 12(b)(6) and apply the same standard as the District Court. Santomenno v. John Hancock Life Ins. Co., 677 F.3d 178, 182 (3d Cir. 2012). Dismissal is appropriate where the plaintiff has not alleged "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We also exercise plenary review of a grant of summary judgment under Rule 56. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015). Summary judgment is appropriate where, viewing all facts and inferences therefrom in the nonmovant's favor, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005). A disputed issue is "genuine only if there is a sufficient evidentiary basis on

1.      Breach of Contract Claims

We next address the dismissal of Glover's breach of contract claims arising from the note and mortgage that WaMu sold to Goldman Sachs and that Wells Fargo serviced. To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Glover challenges the dismissal of Count VIII, which alleges that Goldman Sachs breached Glover's mortgage when WaMu and Wells Fargo improperly charged her foreclosure-related attorney's fees and costs.[11]  The SAC does not plausibly allege that Goldman Sachs breached Glover's mortgage by charging her improper attorney's fees or costs.  In fact, Glover argues that Wells Fargo, not Goldman Sachs, is responsible for improperly charging her fees.  See, e.g., Opening Br. 23 (explaining her "central contention [] that fees charged by [Wells Fargo]" were unreasonable).  Since Glover failed to plausibly allege that Goldman Sachs breached any contractual duty to Glover regarding charges for attorney's fees or costs, Ware, 322 F.3d at 225, we will affirm the dismissal of Count VIII.

which a reasonable jury could find for the non-moving party." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

[11] Glover does not seek reinstatement of Counts V, VI, VII, or X against Goldman Sachs.

17

We will also affirm the grant of summary judgment on the portion of Count I alleging that Wells Fargo breached the 2008 LMA. Glover admits that Wells Fargo abided by the modified terms of her loan, but asserts that the "fees demanded and collected were not reasonable." Opening Br. 21. The 2008 LMA had a provision that covered attorney's fees, but Glover has not pointed to any evidence to show they are unreasonable. Her bare assertions are insufficient. Sheridan v. NGK Metals Corp., 609 F.3d 239, 250 n.12 (3d Cir. 2010). We will therefore affirm summary judgment in favor of Wells Fargo based upon the 2008 LMA.[12]

### 2. Statutory Claims against Wells Fargo[13]

#### a. FDCPA

Glover's claim under the Fair Debt Collection Practices Act ("FDCPA") (Count XI) also fails. Section 1692e(2) of the FDCPA prohibits the "false representation of . . . (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(2)(A), (B), while section 1692f(1) prohibits as an "[u]nfair

---

[12]In Counts I, II, and III, Glover also alleged that Wells Fargo breached the mortgage by misallocating her monthly mortgage payments, improperly collecting escrow charges, and failing to provide proper escrow account statements. On appeal, however, she abandoned these arguments and instead focused on the issue of attorneys' fees. We therefore do not have occasion to address the sufficiency of these allegations to support a breach of contract claim.

[13] Glover does not appeal the Rule 12(b)(6) dismissal of her claims under Pennsylvania's Fair Credit Extension Uniformity Act (Counts XIV & XV), or the grant of summary judgment in favor of Wells Fargo on her unjust enrichment claim (Count IX).

practice[]" the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

According to Glover, "[t]he basis for [her FDCPA] claim" is that Wells Fargo "demanded" unreasonable attorney's fees "that were not legally owed" under her mortgage. Opening Br. 32–33. We agree with the District Court that Glover failed to introduce "any shred of evidence that the fees requested by Wells Fargo were not owed." App. 2471. Glover's proclamation that any attorney's fees Wells Fargo "demanded were not . . . reasonable" and that what she really owed was "$0.0," Opening Br. 32, is not evidence that Wells Fargo was "false[ly] represent[ing]" the fee amounts, 15 U.S.C. § 1692e(2), or attempting to collect amounts "not expressly authorize[d]" under the 2008 LMA, Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 369 (3d Cir. 2011) (citing 15 U.S.C. § 1692f(1)). See Sheridan, 609 F.3d at 250 n.12. Thus, the District Court properly entered summary judgment as to Count XI.

### b. Act 6

We next address Glover's claim under the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Cons. Stat. Ann. § 502 (Count XVI). Section 406 of Act 6 allows a residential mortgage lender to contract for or receive from the mortgage debtor a reasonable fee actually incurred in connection with foreclosure actions. 41 Pa. Cons. Stat. Ann. § 406. Even assuming Wells Fargo is a "residential mortgage lender" under § 406, Glover has failed to present evidence on which a reasonable jury could

conclude that she was charged attorney's fees not incurred or permitted under the loan documents and, more significantly, that she paid any such fees. Thus, she has not shown that there is a genuine issue of material fact for the jury to resolve in connection with her Act 6 claim and so we will affirm summary judgment in Wells Fargo's favor on Count XVI.

### c. UTPCPL

We will also affirm the grant of summary judgment dismissing Glover's claim under the "catch-all" provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi) (Count XVII). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).

As with her FDCPA claim, Glover's "only" and "central contention" under the UTPCPL is that Wells Fargo "demanded payment of fees that were either not authorized or [not] legal." Opening Br. 27–28. Again, Glover produced no evidence to show the fees were unauthorized or illegal or that the 2008 LMA constituted an "unfair or deceptive act[] or practice[]." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008). The 2008 LMA included fees contemplated by the note and mortgage and Glover has pointed to no evidence showing that the fees are unreasonable, not owed, or even

20

paid. The District Court therefore correctly granted summary judgment in favor of Wells Fargo on Count XVII.

E.      Glover's Limited Class Motion

Glover's challenge to the denial of her Limited Class Motion, contending that the District Court "disregarded th[e] inherent fluidity in the certification process," Opening Br. 64, and ignored its "duty and . . . power to narrow a class on its own initiative," id. at 65, also lacks merit.

Glover filed her Limited Class Motion after the October 2, 2012 deadline for filing class motions, and presented no good cause for the untimely filing. Glover argues that she filed the motion after the deadline because it was only then that the Special Master was appointed, thereby creating an "insurmountable financial barrier" that would prevent her from obtaining discovery sufficient to support her Initial Class Motion. Opening Br. 65 n.31. However, we have already sustained the appointment of the Special Master and allocation of fees, and reject this line of argument for the same reason.

Furthermore, Glover does not dispute that, before filing her Initial Class Motion, she represented to the Magistrate Judge that she did not need any amended briefing and that she intended to stand on her original class definition. The court and the other parties were entitled to rely on this representation, and no good cause was shown for relieving

21

her from her representation.  Thus, the District Court acted within its discretion in denying Glover's Limited Class Motion.[14]

III.

For the foregoing reasons, we will affirm.

---

[14] Whether viewed as a case management order or a class certification order, we review denial of the motion for abuse of discretion.  Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 179 (3d Cir. 2014); United States v. Schiff, 602 F.3d 152, 176 (3d Cir. 2010) ("We give a district court broad discretion in its rulings concerning case management both before and during trial.").