**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| JEAN LOUISE VILLANI, INDIVIDUALLY AND IN HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GUERINO VILLANI, DECEASED | No. 66 MAP 2016<br><br>Appeal from the Order of the Chester County Court of Common Pleas, Civil Division, dated 10/5/15 amending the 8/27/15 order at No. 2012-09795 |
| v. | ARGUED: December 6, 2016 |
| JOHN SEIBERT, JR. AND MARY SEIBERT | |
| ----------------------------------------- | |
| FREDERICK JOHN SEIBERT, JR. AND MARY SEIBERT | |
| v. | |
| JEAN LOUISE VILLANI AND THOMAS D. SCHNEIDER, ESQUIRE | |
| APPEAL OF: FREDERICK JOHN SEIBERT, JR. AND MARY SEIBERT | |

**OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: April 26, 2017**

In this interlocutory direct appeal by permission, we consider whether a legislative enactment recognizing a cause of action for wrongful use of civil proceedings

infringes upon this Court's constitutionally prescribed power to regulate the practice of law, insofar as such wrongful-use actions may be advanced against attorneys.

The underlying litigation arose out of a land-ownership dispute between Jean Louse Villani, who was a co-plaintiff with her late husband until his death, and defendants John Seibert, Jr. and his mother, Mary Seibert ("Appellants"). Appellants prevailed in both an initial quiet title action and ensuing ejectment proceedings. During the course of this dispute, the Villanis were represented by Thomas D. Schneider, Esquire ("Appellee").

Subsequently, Appellants notified Mrs. Villani and Appellee that they intended to pursue a lawsuit for wrongful use of civil proceedings based upon Mrs. Villani's and Appellee's invocation of the judicial process to raise purportedly groundless claims. In November 2012, Mrs. Villani countered by commencing her own action seeking a judicial declaration vindicating her position that she did nothing wrong and bore no liability to Appellants. Appellants proceeded, as they had advised that they would do, to file a complaint naming Ms. Villani and Appellee as defendants. The declaratory judgment complaint having been lodged in Chester County, but the ensuing wrongful-use action being filed in Philadelphia, a decision was made to coordinate the matters in the Chester County court.

Appellee interposed preliminary objections to Appellants' complaint. As is relevant here, he contended that the statutory scheme embodying a cause of action for wrongful use of civil proceedings, commonly referred to as the "Dragonetti Act,"[1] is

---

[1] Act of Dec. 19, 1980, P.L. 1296, No. 232 (codified at 42 Pa.C.S. §§8351-8354) (the "Dragonetti Act" or the "Act").

Notably, Appellants had not specifically referenced the Dragonetti Act in their complaint. As the proceedings have developed, however, it has become clear that Appellants are relying upon the enactment.

unconstitutional.[2]  Appellee relied on Article V, Section 10(c) of the Pennsylvania Constitution, which invests in this Court the power to prescribe general rules "governing practice, procedure and the conduct of all courts," as well as "admission to the bar and to practice law," while directing that "[a]ll laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."  PA. CONST. art. V, §10(c).  He also stressed that this Court has characterized its constitutional and inherent powers to supervise the conduct of lawyers as being exclusive.  *See, e.g.*, Pa.R.D.E. 103; *Commonwealth v. Stern*, 549 Pa. 505, 510, 701 A.2d 568, 570 (1997).

Centrally, Appellee portrayed the Dragonetti Act as an unconstitutional incursion by the General Assembly upon the Court's power under Article V, Section 10(c).  Given this asserted defect, he claimed that attorneys should be immunized from any liability under these statutory provisions.  In support, Appellee referenced a series of cases in which this Court had stricken legislative enactments on the basis that those statutes intruded on the Court's constitutionally prescribed powers.  *See* Memorandum of Law in Support of Preliminary Objections in *Seibert v. Villani* ("Defendant's Memorandum"), No. 2012-09795 (C.P. Chester), at 7-9 (citing *Beyers v. Richmond*, 594 Pa. 654, 937 A.2d 1082 (2007) (plurality), *Shaulis v. Pa. State Ethics Comm'n*, 574 Pa. 680, 833 A.2d 123 (2003), *Gmerek v. State Ethics Comm'n*, 569 Pa. 579, 807 A.2d 812 (2002) (equally divided Court), *Stern*, 549 Pa. 505, 701 A.2d 568, *Snyder v. UCBR*, 509 Pa. 438, 502

---

[2] The record reflects that Appellee served a copy of the preliminary objections upon the Attorney General of Pennsylvania, as is required in instances in which "an Act of Assembly is alleged to be unconstitutional" by a civil litigant.  Pa.R.C.P. No. 235.  The Attorney General, however, apparently did not seek to intervene as a party or otherwise make a presentation in defense of the legislative enactment, as would be expected ordinarily.  *See* 71 P.S. §732-204(a)(3) ("It shall be the duty of the Attorney General to uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction.").

A.2d 1232 (1985), *Wajert v. State Ethics Comm'n*, 491 Pa. 255, 420 A.2d 439 (1980), and *In re Splane*, 123 Pa. 527, 16 A. 481 (1889)).

Appellee also observed that, in defining the contours of liability for wrongful use of civil proceedings, the Legislature fashioned a "probable cause" standard that permits a lawyer acting in good faith to proceed with litigation, where he or she "reasonably believes that under [the supporting] facts the claim may be valid under the existing or developing law." 42 Pa.C.S. §8352(1). According to Appellee, however, such prescription clashes with the Pennsylvania Rules of Professional Conduct promulgated by this Court, which authorize attorneys to advance good faith arguments for "*extension, modification or reversal* of existing law." Pa.R.P.C. §3.1 (emphasis added). It was his position that the asserted difference "surely represents an intrusion by the legislature into the exclusive power of the judiciary that is prohibited under Article V, Section 10(c)." Defendant's Memorandum at 11.

Furthermore, Appellee took issue with the Dragonetti Act's incorporation of subjective standards. *See, e.g.*, 42 Pa.C.S. §8352(3) (defining another contour of "probable cause" as encompassing a good-faith belief that litigation "is not intended to merely harass or maliciously injure the opposite party"). He contrasted such subjectivity with the more objective litmus established under Rule of Professional Conduct 3.1. Pa.R.P.C. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless *there is a basis in law and fact* for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." (emphasis added)). Appellee opined that the statute's focus on subjective motivation "means, as a practical matter, that summary disposition is exceedingly difficult." Defendant's Memorandum at 12. He concluded that, "[o]nce again, the

legislature violates Article V, section 10(c) by purporting to regulate attorney conduct through different standards than those selected by the Supreme Court." *Id.*

In a similar line of argument, Appellee claimed that the Act's prescription for monetary damages should be viewed as a further intrusion into this Court's exclusive province. In this regard, Appellee explained that the Rules of Disciplinary Enforcement, also promulgated by this Court, establish the procedures for addressing violations of the Rules of Professional Conduct, encompassing all stages from the investigation of an allegation of inappropriate conduct to the final disposition of a complaint by this Court, as well as delineating all available forms of discipline. *See* Pa.R.D.E. 204 - 208. Appellee commented that: "Nowhere do the disciplinary rules permit an opposing party to seek monetary damages from an attorney." Defendant's Memorandum at 12. According to Appellee, the only tribunal authorized to address any and all grievances against attorneys is the Disciplinary Board, which functions under the Supreme Court's oversight. *See id.* (citing Pa.R.D.E. 205-207). "In short," he proclaimed, "the concept of a lawsuit against an attorney for money damages based on his conduct in a civil case is repugnant to Article V, section 10(c)." Defendant's Memorandum at 13; *accord id.* ("It is for the judiciary to sanction attorneys for bringing an action that is purportedly baseless or for engaging in other inappropriate conduct.").

In response, Appellants defended the Dragonetti Act as substantive remedial legislation designed, for the benefit of victims, to redress wrongs committed by those pursuing frivolous litigation. Appellants explained that it has long been the law of the Commonwealth that a lawyer may be liable for tortious conduct committed in his professional capacity. *See* Plaintiffs' Memorandum of Law in Opposition to Preliminary Objections in *Seibert*, No. 2012-09795 ("Plaintiff's Memorandum"), at 5 (citing *Adelman v. Rosenbaum*, 133 Pa. Super. 386, 391-92, 3 A.2d 15, 18 (1938), for the proposition

that the defendant in a common law action for malicious use of process "cannot invoke the plea of privilege as an attorney acting for a client" because "malicious action is not sheltered by any privilege"); *accord Dietrich Indus., Inc. v. Abrams*, 309 Pa. Super. 202, 208, 455 A.2d 119, 123 (1982) ("An attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable in an action for malicious use of process.").[3]

Appellants further offered that the Dragonetti Act was fashioned after Section 674 of the Second Restatement of Torts, which indicates as follows:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
>
> (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and

---

[3] Parenthetically, Pennsylvania courts recognize a distinction between the common law torts of abuse of process and malicious use of process. *See Dietrich Indus.*, 309 Pa. Super. at 206-07, 455 A.2d at 122. *See generally* RUSSELL J. DAVIS, 2 SUMM. PA. JUR. 2D TORTS §19.1 (2017) ("An abuse of process, either civil or criminal, arises where a party employs it for some unlawful object rather than for the purpose that the law intends it to effect; in other words, a perversion thereof, in distinction from malicious use of process, either civil or criminal, wherein the tortfeasor intends that the process have its proper effect and execution although it is wrongfully instituted." (footnotes omitted)). Some other courts, however, have found the distinction between the two torts to be confounding and cumbersome and, accordingly, have combined them. *See, e.g.*, *Yost v. Torok*, 344 S.E.2d 414, 417-18 (Ga. 1986), *superseded by statute as recognized in Great W. Bank v. Se. Bank*, 507 S.E.2d 191, 192-93 (Ga. Ct. App. 1999). Indeed, the Dragonetti Act may be regarded as encompassing aspects of both common law torts, given that, under its definition of "probable cause" which will support the legitimate procurement, initiation, or continuation of civil proceedings, such cause is lacking *either* in the absence of a reasonable belief that the claim may be valid, *see* 42 Pa.C.S. §8352(1), *or* without an attorney's good faith belief that the cause is not intended merely to harass or injure the opposing party, *see id.* §8352(3).

(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

RESTATEMENT (SECOND) OF TORTS §674 (1977). Moreover, Appellants alluded to comment d to Section 674, which provides:

> If [an] attorney acts without probable cause for belief in the possibility that [a] claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.

*Id.*, cmt. d.

Appellants noted that the Superior Court had repeatedly cited and adopted Section 674 and referenced comment d relative to actions brought against attorneys, *see* Plaintiffs' Memorandum at 6 (citing *Gentzler v. Atlee*, 443 Pa. Super. 128, 135 n.6, 660 A.2d 1378, 1382 n.6 (1995), *Meiksin v. Howard Hanna Co.*, 404 Pa. Super. 417, 420-21, 590 A.2d 1303, 1305 (1991), and *Shaffer v. Stewart*, 326 Pa. Super. 135, 140-43, 473 A.2d 1017, 1020-21 (1984)), and that no appellate court had ever concluded that the Dragonetti Act is unconstitutional. Additionally, they asserted that "[t]he fact that the common law claim for wrongful use of civil process was codified in 1980 does not render the claim unconstitutional." *Id.* at 8. According to Appellants, none of the cases cited by Appellee in which this Court had declared other statutes to be unconstitutional bore any relevance, since none pertained to the prescription for substantive redress for victims considering the harm caused by a lawyer's tortious conduct.

Appellants also differed with Appellee's depiction of the legislative purpose underlying the Act as being to regulate the practice of law. Rather, they contended that the primary objective was to codify the common law cause of action for malicious

prosecution, while adjusting it to eliminate the requirement of seizure or arrest and substitute gross negligence for malice as a liability threshold. *See* Plaintiffs' Memorandum at 7 (citing *Nw. Nat'l Cas. Co. v. Century III Chevrolet, Inc.*, 863 F. Supp. 247, 250 (W.D. Pa. 1994)); *accord Walsavage v. Nationwide Ins. Co.*, 806 F.2d 465, 467 (3d Cir. 1986). *See generally* 42 Pa.C.S. §8351(b) ("The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.").

According to Appellants' position as stated from the outset, the Dragonetti Act does not conflict with Rule of Professional Conduct 3.1, which was never intended to govern civil liability or otherwise grant or curtail remedies to third parties harmed by an attorney's tortious conduct. *See* Plaintiffs' Memorandum at 7-8 (citing the Scope provision from the Rules of Professional Conduct for the propositions that "violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached" and that the rules "are not designed to be a basis for civil liability"). Along these lines, Appellants also referenced *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992), in which this Court chastised the Superior Court for "badly confus[ing] the relationship between duties under the rules of ethics and *legal rules that create actionable liability apart from the rules of ethics*." *Id.* at 255, 602 A.2d at 1284 (emphasis added). In light of this essential distinction between ethical regulation and substantive remedial laws, Appellants maintained that the Dragonetti Act "supplements, but does not interfere with, the operation of those rules." Plaintiffs' Memorandum at 8.

The common pleas court granted Appellee's preliminary objections grounded on his constitutional challenge to the Dragonetti Act, for essentially the reasons that he had advanced. Citing to decisions that Appellee had referenced in which this Court has

suspended statutes per its Article V, Section 10(c) powers, the county court observed that the "Supreme Court has long asserted its authority over the conduct of attorneys." *Villani*, No. 2012-09795, *slip op.* at 4 n.1 (C.P. Chester Aug. 27, 2015). The court further reasoned that the "Dragonetti Act goes to the heart of what an attorney is trained and called upon to do, exercise legal judgment about the existence of probable cause under the law as it presently exists or is developing." *Id.* at 5 n.1. In this regard, the court of common pleas credited the position that the Act conflicts with Rule of Professional Conduct 3.1 by adopting a more restrictive standard and in grounding liability upon subjective beliefs. *See id.* ("[T]he legislature violates Art. V, §10(c) of the Pennsylvania Constitution by attempting to regulate attorney conduct through standards other than those selected by the Supreme Court."). Additionally, the court agreed with Appellee that the imposition of monetary damages under the Act, *see* 42 Pa.C.S. §8353, represented a further transgression, since no disciplinary rule promulgated by this Court so provides. The court of common pleas concluded, again, essentially echoing Appellee's arguments:

> The only tribunal authorized by the Supreme Court to address grievances against an attorney is the Disciplinary Board. Pa.R.D.E. 205. The concept of a lawsuit against an attorney for money damages based on how a civil case is conducted is repugnant to the system of discipline established by the Supreme Court pursuant to Art. V, §10(c) of the Pennsylvania Constitution.
>
> &ast; &ast; &ast;
>
> For the reasons stated, the Dragonetti Act is a legislative attempt to intrude upon the Supreme Court's exclusive authority to regulate the conduct of attorneys in the practice of law. It is for the judiciary to sanction lawyers for bringing actions that are baseless or for otherwise engaging in inappropriate conduct. The Dragonetti Act, as it pertains to lawyers, is unconstitutional and unenforceable.

*Id.* at 6-7 n.1.

Appellants sought permission to appeal on an interlocutory basis,[4] initially in the Superior Court, which was granted after the proceedings were transferred to this Court. *See* 42 Pa.C.S. §722(7) (vesting exclusive original appellate jurisdiction in the Supreme Court over a final order holding a Pennsylvania statute unconstitutional). Our review of a challenge to the constitutionality of a duly enacted statute is plenary. *See, e.g.*, *Commonwealth v. Hopkins*, 632 Pa. 36, 49, 117 A.3d 247, 255 (2015).

Presently, Appellants maintain their core contention that the Dragonetti Act constitutes a substantive remedial law designed to provide an essential remedy to third parties harmed by abusive litigation, and not a misguided effort by the General Assembly to usurp this Court's regulatory power over attorneys.

Appellants supplement this position with a number of observations and arguments that they did not specifically present to the county court. In addition to referencing cases from the Superior Court, Appellants relate that this Court has acknowledged the Dragonetti Act on several occasions. *See* Brief for Appellants at 23 (citing *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 299 n.1, 908 A.2d 875, 877 n.1 (2006), and *McNeil v. Jordan*, 586 Pa. 413, 438-39, 894 A.2d 1260, 1275 (2006)). In the *McNeil* decision, Appellants elaborate, this Court found that the Dragonetti Act served as a useful aid in interpreting the Rules of Civil Procedure governing pre-complaint discovery. *See McNeil*, 586 Pa. at 438-39, 894 A.2d at 1275. From this, Appellants draw the conclusion that "the Dragonetti Act comports entirely with the duty of the litigant, whether party or attorney, to demonstrate good faith and probable cause 'in the procurement, initiation or continuation of civil proceedings' and to conduct discovery in conformity with these basic principles." Brief for Appellants at 26-

---

[4] The claim against Mrs. Villani remained to be resolved in the common pleas court.

27 (quoting 42 Pa.C.S. §8351(a)); *see also id.* at 27 ("In other words, this Court has extolled the Dragonetti Act, which codified centuries of common law, as a necessary and appropriate basis for relief for victims of abusive litigation conduct.").

Next, Appellants explain that this Court previously considered the constitutionality of a segment of the Dragonetti Act, at least, when it suspended its provision for attorney certifications and civil penalties for violations. *See* Pa.R.C.P. No. 1023.1(e) (reflecting the suspension of 42 Pa.C.S. §8355). According to Appellants, by suspending Section 8355, while leaving intact the remaining sections of the Act, this Court "tacitly endorsed Sections 8351 through 8354 as constitutional." Brief for Appellants at 28. Appellants also highlight the explanatory note to Rule 1023.1, referencing the Act as providing "additional relief from dilatory or frivolous proceedings." Pa.R.C.P. No. 1023.1, Note; *see* Brief for Appellants at 29 ("The explanatory comment to Rule of Civil Procedure 1023.1, which refers directly to the Dragonetti Act as a viable cause of action, is further evidence that the Supreme Court has for several decades approved of the Dragonetti Act as a supplemental remedy for victims of frivolous civil proceedings.").

Appellants additionally argue that Rule 1023.1 sanctions do not adequately compensate the victims of frivolous claims. In this regard, Appellants quote *Werner v. Plater-Zyberk*, 799 A.2d 776 (Pa. Super. 2002), as follows:

> [The Dragonetti Act defendant] argue[s] that [the plaintiff's] interests would be vindicated adequately via sanctions imposed by the federal district court. However, the damages [the plaintiff] seeks are distinct from the various types of penalties that may be imposed by a court as sanctions against a tortfeasor. Sanctions, including monetary sanctions paid to an adversary in the form of fees or costs, address the interests of the court and not those of the individual. A litigant cannot rely on a sanction motion to seek compensation for every injury that the sanctionable conduct produces. Rather, an injured party must request tort

> damages to protect his personal interest in being free from unreasonable interference with his person and property.

>         *              *              *

> The main objective of Rule 11 is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses. While imposing monetary sanctions under Rule 11 may confer a financial benefit on a victimized litigant, this is merely an incidental effect on the substantive rights thereby implicated. Simply put, Rule 11 sanctions cannot include consequential damages and thus are not a substitute for tort damages. In light of the foregoing, we conclude that [the plaintiff's] right to seek tort damages for his alleged injuries exists independently of, and in addition to, any rights he might possess to petition for sanctions from the federal district court . . ..

*Id.* at 784-85 (citations omitted); *accord Perelman v. Perelman*, 125 A.3d 1259, 1269-72 (Pa. Super. 2015).

Appellants further take issue with the distinction drawn by the common pleas court and Appellee between the Dragonetti Act's probable cause requirement and the standard set forth in Rule of Professional Conduct 3.1. In this regard, Appellants again cite *McNeil* as clarifying that "the term 'probable cause' is sufficiently well defined and understood in Pennsylvania law to ensure an objective, unified standard . . .." *McNeil*, 586 Pa. at 438, 894 A.2d at 1275. Furthermore, Appellants explain that in the decades throughout which the Dragonetti Act has been in existence, no Pennsylvania appellate court has ever interpreted the enactment to require that the term "developing law," as it appears in the enumeration of the probable cause standard set forth in Section 8352(1), should not include an argument for extension, modification or reversal of exiting law. *See* Brief for Appellants at 34 ("What, after all, is a 'developing law' if not a law that is the subject of legal argument and debate, including debate over the extension, modification or reversal of existing law?").

In terms of the subjective-objective distinction drawn by the county court and Appellee, Appellants asserts that this rests on a misinterpretation of Rule of Professional Conduct 3.1, which recognizes the necessity of "good faith" in argumentation. Pa.R.P.C. 3.1. Appellants also posit:

> Whether charged with a violation of [Rule] 3.1 or a violation of the Dragonetti Act, an attorney would defend with the same evidence upon which the attorney based his or her good faith belief that there was a basis in law and fact to bring or defend the underlying civil proceeding. In either case, the finder of fact would be charged with determining whether the lawyer's belief was objectively reasonable, *i.e.*, whether the lawyer had acted in good faith by relying upon creditable facts and a non-frivolous legal argument for purposes of probable cause to pursue a claim.

Brief for Appellants at 35. In this line of argument, Appellants note that the governing standards, as they have developed in the decisional law, are highly deferential relative to attorney judgment. *See, e.g.*, *Perelman*, 125 A.3d at 1264 ("Insofar as attorney liability is concerned, 'as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudice the case.'" (quoting *Morris v. DiPaolo*, 930 A.2d 500, 505 (Pa. Super. 2007))). To the degree that an assessment of a lawyer's beliefs is necessary, Appellants do not agree with the common pleas court and Appellee that this unnecessarily complicates the summary judgment process.

Appellants also relate that there are other legislative remedial schemes that operate to authorize compensation to victims of wrongful, injurious acts committed by attorneys. For example, Appellants reference the Loan Interest and Protection Law,[5] which imposes civil liability for collection of interest or charges in excess of those

---

[5] Act of Jan. 30, 1974, P.L. 13, No. 6 (as amended 41 P.S. §§101-605).

otherwise permitted under the enactment. *See* 41 P.S. §502. They indicate that this Court recently confirmed, as a matter of statutory interpretation, that attorneys are not excluded from the category of persons subject to liability under the act. *See Glover v. Udren Law Offices, P.C.*, ___ Pa. ___, ___, 139 A.3d 195, 200 (2016). Appellants draw supportive significance from the absence of any mention, in *Glover*, of a conflict between the enactment under review and Article V, Section 10(c) of the Pennsylvania Constitution.

Finally, Appellants explain that this Court previously has rejected constitutional challenges to other statutes that impose ethical and professional requirements upon groups that include attorneys. *See Maunus v. State Ethics Comm'n*, 518 Pa. 592, 544 A.2d 1324 (1988) (disapproving an attack upon an Ethics Act requirement for all employees of the Pennsylvania Liquor Control Board, which included attorney-employees, to file statements of financial interest). Appellants highlight the *Maunus* Court's observations that: the challenged enactment was not targeted solely at lawyers; the statute did not impose a duty upon every attorney admitted to practice law in the Commonwealth; and the duty imposed was not inconsistent with the professional and ethical obligations arising from directives of this Court. *See id.* at 600, 544 A.2d at 1328. Indeed, responding to the assertions of the county court and Appellee that the imposition of civil liability upon attorneys is repugnant, Appellants express the contrary position that "immunization of lawyers who have engaged in the wrongful use of civil proceedings is repugnant." Brief for Appellants at 44.

In support of Appellants, *amicus curiae* Nicholas O. Brown -- who is a plaintiff in a pending Dragonetti action lodged against an attorney-defendant -- invokes Article I, Section 11 of the Pennsylvania Constitution. *See* PA. CONST. art. I, §11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation

shall have remedy by due course of law . . ..").  *Amicus* views the form of lawyer immunity envisioned by Appellee to be fundamentally inconsistent with this constitutionally prescribed right to a remedy.  Furthermore, he believes that nothing in Article V, Section 10(c) was ever intended to invalidate the Legislature's core power to fashion substantive law, *inter alia*, by compensating persons harmed by abusive and frivolous litigation.

Appellee, for his part, opens his brief with an extensive array of waiver-based arguments, mainly contending that, since Appellants failed to present most of the arguments advanced in their appellate brief during the course of the proceedings in the common pleas court, those are unavailable for this Court's present review.  For example, Appellee asserts that Appellants failed to reference Rules of Disciplinary Enforcement 204 though 208 or to provide a developed argument with regard to Rule of Professional Conduct 3.1.  Indeed, according to Appellee's parsimonious view of what was presented to the county court, the sole argument that Appellants preserved for appellate review "is the irrelevant and inaccurate claim that the Dragonetti Act 'recodified' Section 674 of the Restatement (Second) of Torts."  Brief for Appellee at 8 n.1.

On the merits, Appellee reiterates the arguments that prevailed in the common pleas court, while highlighting some of this Court's more doctrinaire expressions of the principle of separation of powers.  *See, e.g., Commonwealth v. Sutley*, 474 Pa. 256, 262, 378 A.2d 780, 783 (1977) (pronouncing that "any encroachment upon the judicial power by the legislature is offensive to the fundamental scheme of our government,"

while invalidating provisions of a statutory scheme attempting to extend leniency to persons convicted of certain misdemeanor drug offenses).[6]

To the list of the seven cases which he presented to the common pleas court, Appellee adds the opinion in support of affirmance in *Lloyd v. Fishinger*, 529 Pa. 513, 605 A.2d 1193 (1992) (equally divided Court) (determining, by operation of law, that a statute intended to curtail attorney solicitations of hospitalized persons represented an infringement upon the Supreme Court's exclusive power to regulate attorneys). He also references the Commonwealth Court's decision in *Heller v. Frankston*, 76 Pa. Cmwlth. 294, 303, 464 A.2d 581, 586 (1983) (finding a statute attempting to regulate attorneys' fees to be invalid on separation of powers grounds). It is Appellee's core position that "the Dragonetti Act is yet another attempt by the legislature to trod on turf belonging exclusively to this Court." Brief for Appellee at 31.

In this respect, Appellee notes that the Act makes specific reference to attorneys, *see* 42 Pa.C.S. 8352(3) (discussing probable cause in terms of the good-faith belief of an "attorney of record"), and plainly purports to regulate them in legal endeavors, including "tak[ing] part in the procurement, initiation or continuation of civil proceedings against another." *Id.* §8351. Appellee further distinguishes the scenario from those under consideration in decisions such as *Gmerek*, *Shaulis*, and *Beyers*, where at least some Justices did not regard the core functions of legal representation as necessarily being at stake. *See* Brief for Appellee at 34 n.4 (discussing this author's responsive opinions in *Gmerek*, *Shaulis*, and *Beyers*).

---

[6] We note that several Justices, as well as other judges and commentators, have expressed substantial discomfort with decisions, such as *Sutley*, which have evaluated legislative social policy judgements having broad-scale, substantive impacts mainly in terms of a concern for judicial power. *See, e.g.*, *Friends of Pa. Leadership Charter Sch. v. Chester Cnty. Bd. of Assessment Appeals*, 627 Pa. 446, 463-64, 101 A.3d 66, 76 (2014) (Saylor, J., concurring, joined by Todd, J.).

Appellee also contrasts the monetary sanctions authorized under the civil procedural rules -- "an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation," Pa.R.C.P. No. 1023.4(a)(2)(ii), (iii) -- with the Dragonetti Act's authorization of damages for harm to reputation and emotional distress, as well as punitive damages. *See* 42 Pa.C.S. §8353(2), (5), (6). Moreover, Appellee takes comfort in the fact that a judge determines what, if any, sanctions to impose under Rule 1023.4, while expressing apprehension that Dragonetti claims that surmount the summary disposition stage are submitted to lay juries. According to Appellee, it was this Court's intention to prevent the Legislature from "inventing" monetary remedies and permitting juries to consider awards of damages against lawyers. Brief for Appellee at 39.

In terms of the argument that the Dragonetti Act is substantive and remedial in nature, Appellee points to the *Stone Crushed Partnership* decision, in which this Court indicated that the enactment "punishes" an attorney who brings a wrongful civil action. *Stone Crushed P'ship*, 589 Pa. at 299 n.1, 908 A.2d at 877 n.1. Moreover, because the "Dragonetti Act makes attorneys the target of lawsuits by their opponents in civil cases," Appellee discerns a "regulatory – indeed, inhibitory – effect on plaintiffs' attorneys." Brief for Appellee at 41. To the degree that the Act would be found to have remedial attributes, it is Appellee's position that Article V, Section 10(c) makes no exception for remedial considerations.

Additionally, Appellee undertakes to provide some assurance that other remedies will be available to injured litigants, upon this Court's disapproval of the Dragonetti Act. For example, Appellee explains that plaintiffs will retain the ability to sue laypersons

under the Act, as well as laypersons *and attorneys* for the common law tort of abuse of process. In the latter regard, Appellee accepts that attorneys are properly subject to substantive common law lawmaking by this Court, in spite of his position that the Legislature cannot supplant the common law pertaining to lawyers, as is otherwise its prerogative in the broader sphere. *See generally Sternlicht v. Sternlicht*, 583 Pa. 149, 163, 876 A.2d 904, 912 (2005) (recognizing the primacy of the General Assembly in the substantive lawmaking arena). Appellee also highlights that plaintiffs retain the ability to seek monetary sanctions against attorneys under the Rules of Civil Procedure. *See, e.g.*, Pa.R.C.P. 1023.1(d). In this segment of his argument, Appellee relates that plaintiffs (albeit not Appellants at this stage) have the ability to ask this Court to adopt the Second Restatement's Section 674 or some variant as remedial measures, per its common law decision-making authority.[7]

With respect to the issues raised by Appellants' *amicus*, Appellee explains, *inter alia*, that *amici* cannot raise issues that have not been preserved by the litigants. *See, e.g.*, *Hosp. & Healthsystem Ass'n of Pa. v. DPW*, 585 Pa. 106, 114 n.10, 888 A.2d 601, 606 n.10 (2005)*.*

Appellee's merits position is supported by *amici* the Professional Liability Defense Federation and the Pennsylvania Bar Association, both of which present a series of policy arguments to the effect that the Dragonetti Act represents bad policy. *See, e.g.*, Brief for *Amicus* Prof'l Liab. Def. Fed'n at 13 (asserting that "attorneys are disincentivized from arguing for changes or reforms to existing law," infringing on access to the court system for citizens); *id.* at 16 (indicating that the Act imposes punishment that

---

[7] Appellee has applied for leave to file a surrebuttal brief, the consideration of which was deferred to the merits stage of our review. That motion is now granted, albeit that the discrete discussion of waiver precepts contained in the brief is not of great relevance to our decision here. *See infra* Part I.

is "superfluous and inappropriately magnifies an already steep set of consequences appropriately set forth by law"); *id.* (suggesting that the Dragonetti Act discourages the voluntary settlement of actions); Brief for *Amicus* PBA at 19, 25 (portraying the Act as encroaching on "an attorney's ethical duty to advocate vigorously for his or her clients," since the "prospect of facing a jury trial stands in tension with the lawyer's ethical and fiduciary duties to represent each client zealously within the bounds of the law and to act in the client's best interests"); *id.* at 29 (contending that the Act "tends to undermine the mutual respect and civility with which Pennsylvania lawyers treat each other"); *id.* at 29 (suggesting that "Dragonetti threat letters have now become routine and may be employed as a tactical weapon to leverage a premature dismissal or unfair settlement with impunity").

## I. Waiver

In response to Appellee's claim that Appellants have preserved solely an argument that the Dragonetti Act aligns with Section 674 of the Second Restatement of Torts, and thus, that they have waived any and all defenses of the Act's constitutionality, we disagree. While plainly Appellants' advocacy could have been sharper from the outset, we believe that a fair reading of their presentation to the common pleas court encompasses the position that the Act should be regarded as a broadly applicable substantive, remedial scheme within the province of the General Assembly, and not as a legislative regime targeted to lawyer regulation.

Considered as such, it was never necessary for Appellants, for example, to discuss the specifics of the Rules of Disciplinary Procedure. In this regard Appellants' defense of the statute does not depend on the particulars of Rule 204's prescription for eight forms of discipline; Rule 205's delineation of the structure, power, and duties of the Disciplinary Board; Rule 206's provision for hearing committees and special

masters; Rule 207's designation of the power and duties of Disciplinary Counsel; or Rule 208's enumeration of the procedures, including informal proceedings, formal hearings, review and action by the Disciplinary Board and the Supreme Court, and emergency temporary suspension orders. *See* Pa.R.D.E. 204-208. Simply put, Appellants have not disputed the fact that this Court has implemented a comprehensive regulatory regime governing the professional conduct of lawyers; rather, they merely have maintained that the Act should not be regarded as transgressing the Court's authority in such arena.

For these reasons, we believe that this appeal can be fairly resolved by this Court based on the core arguments presented, and without a lengthy digression into the extensive waiver discussion presented by Appellee. Moreover, in the common pleas court and before this Court upon our *de novo* and plenary review, Appellee bore -- and bears -- the heavy burden of establishing that a duly-enacted and presumptively valid statute clearly and palpably violates the Constitution, with any doubts being resolved in favor of the statute's validity. *See, e.g.*, *Payne v. DOC*, 582 Pa. 375, 383, 871 A.2d 795, 800 (2005). We deem the presentations both in the county court and here to be sufficient to permit our present review of whether Appellee has done so.[8]

_____

[8] In any event, we do not find it necessary, in our own merits analysis, to rely on many of the minor premises within Appellants' presentation. For example, we do not see the line of Appellants' "tacit acceptance" arguments as being particularly useful. *Cf. Maloney v. Valley Med. Facilities, Inc.*, 603 Pa. 399, 417, 984 A.2d 478, 490 (2009) (rejecting the position that, because a particular legal approach had been accepted by an intermediate court for a lengthy period of time it therefore should be deemed to have been accepted by this Court, while observing that "[f]or very good reasons, our decisional law generally develops incrementally, within the confines of the circumstances of cases as they come before the Court").

Parenthetically, in terms of such minor premises, we also observe that the applicable Rule of Appellate Procedure is framed in terms of "issue" preservation. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first

(continued…)

## II. Merits

We begin with the notion that the powers accorded to this Court under Article V, Section 10(c) are exclusive. There are several reasons why this assertion must be considered with great circumspection.

For example, this Court promulgated and maintains a set of evidence rules per its rulemaking authority under Article V, Section 10(c), *see* Pa.R.E. 101(b), while also expressly recognizing that some of the law of evidence is appropriately governed by statute. *See id.*, comment; *see also Commonwealth v. Olivo*, ___ Pa. ___, ___, 127 A.3d 769, 780 (2015). Furthermore, this Court enforces procedural provisions of statutes, such as the Post Conviction Relief Act. *See* 42 Pa.C.S. §9545.[9]

_____

(…continued)
time on appeal."). *See generally United States v. Joseph*, 730 F.3d 336, 339-40 (3d Cir. 2013) (offering an interesting discussion of the difference between "issues" and "arguments" centered on the suppression context). Although certainly this Court has deemed various "arguments" waived with reference to Rule 302, *see, e.g.*, *Commonwealth. v. Ballard*, 622 Pa. 177, 210, 80 A.3d 380, 400 (2013), the interests of justice would not be well served were a court of last resort deciding matters of statewide public importance to forbid appellants *any* latitude to make adjustments to the supporting rationales offered in the hierarchical review process. For example, a previous reviewing court's expression of its own rationale may legitimately impact upon the focus of ensuing appellate presentations, by substantially narrowing and/or focusing the subject matter.

The appropriate degree of such latitude afforded to appellants to alter arguments can be most sharply determined in cases -- unlike this one -- in which the Court *disagrees* with a main thrust of the presentation that was rejected in the prior reviewing court or courts, albeit that this Court might *agree* with a supplemental argument offered on appeal.

[9] Notably, this Court has acted to suspend certain procedural provisions of this statute, *see* 42 Pa.C.S. §9545(d)(2) (suspended), but it has not suspended others, such as the requirement for a signed certification as to each intended witness, *see id.* §9545(d)(1). These sorts of differences, implemented by predecessor Justices, are, to the present complement of the Court, difficult to explain.

The Court also has acknowledged that many subjects of legislation and/or judicial rulemaking possess both attributes implicating this Court's rulemaking power *and* substantive-law characteristics which are suited to the province of the political branch. *See Olivo*, ___ Pa. at ___, 127 A.3d at 777 ("We have often recognized that the distinction between procedural and substantive actions engenders little consensus." (citation omitted)); *see also Laudenberger v. Port Auth. of Allegheny Cnty.*, 496 Pa. 52, 57, 436 A.2d 147, 150 (1981) (indicating that procedure and substance are often "interwoven" and incapable of "rational separation," and the lines of demarcation are "difficult to determine" and "shadowy" (citations omitted)). Notably, moreover, per the very provision of the Constitution which Appellee invokes, this Court simply is not permitted to access its rulemaking power to "enlarge nor modify the *substantive rights* of any litigant." PA. CONST. art. V, §10(c) (emphasis added);[10] *cf. Sutley*, 474 Pa. at 264-65, 378 A.2d at 784 (alluding to the Legislature's power to "promulgate all of the substantive law for this jurisdiction").

Accordingly, in the multitude of mixed-faceted lawmaking and rulemaking ventures, some discerning judgment obviously must be brought to bear to sort through the pervading power questions. Indeed, even the most inflexible of this Court's decisions historically have recognized that the separation of powers doctrine contemplates "a degree of interdependence and reciprocity between the various branches." *Sutley*, 474 Pa. at 262, 378 A.2d at 783.

---

[10] Such prescription provides context to the explicit boundaries of the Rules of Professional Conduct. *See* Pa.R.P.C., Scope ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached" and that the rules "are not designed to be a basis for civil liability"). *See generally Maritrans*, 529 Pa. at 255, 602 A.2d at 1284 (stressing the difference between duties under rules of professional conduct and substantive liability standards).

With respect to the Dragonetti Act, notwithstanding the dictum from *Stone Crushed Partnership*, we agree with Appellants that the statute manifests a legislative purpose to compensate victims of frivolous and abusive litigation and, therefore, has a strong substantive, remedial thrust.[11] *See Dooner v. DiDonato*, 601 Pa. 209, 231, 971 A.2d 1187, 1201 (2009) (explaining that tort laws "necessarily perform an important *remedial role* in compensating victims of torts," albeit in the context of a common law tort (emphasis added)); *accord United States v. Burke*, 504 U.S. 229, 234, 112 S. Ct. 1867, 1871 (1992) ("Remedial principles . . . figure prominently in the definition and conceptualization of torts."). It is also important, in our estimation, that the law is of general application and is not specifically targeted to legal professionals. *See Maunus*, 518 Pa. at 600, 544 A.2d at 1328.[12]

There is no question that the enactment has a punitive dynamic, since it authorizes the award of punitive damages "according to law," 42 Pa.C.S. §8353(6), and that it embodies disapprobation of a specified range of conduct by attorneys. Both of these aspects may bear closer review in future cases that are framed more narrowly.

---

[11] Notably, this Court has previously recognized the Legislature's desire to supplant the substantive common law remedial scheme. *See, e.g.*, *Matter of Larsen,* 532 Pa. 326, 440, 616 A.2d 529, 587 (1992) ("[T]he common law tort of malicious prosecution has been codified and modified as a statutory cause of action.").

[12] Appellee references an opinion in support of affirmance from the *Gmerek* case as reflecting that the significance of broad scale application is limited to a particular factual paradigm. *See Gmerek*, 569 Pa. at 589, 807 A.2d at 818 (Zappala, C.J., Opinion in Support of Affirmance) (positing that *Maunus* "was limited to the situation presented therein, that being the imposition of regulations by an employer of an employee/attorney"). Although that opinion correctly described the context of *Maunus*, in our considered judgment the significance of whether substantive lawmaking is targeted to attorneys or has broader application transcends scenarios involving lawyer-employees.

For example, there may be an argument to be made that punitive damages awards should not be available against attorney-defendants in Dragonetti cases, given that this Court has specifically provided for sanctions to deter violations. *See* Pa.R.C.P. No. 1023.4(a)(1). And it may also be that, in an appropriate case, the Court might invoke Article V, Section 10(c) -- in a fashion more restrained than according blanket immunization to lawyers from the effects of a substantive-law statute -- to construe Dragonetti Act liability as unwarranted in instances in which a claim was pursued based on a good faith argument that the existing law should be changed. Potentially, the principle that statutes should be afforded a constitutional construction might come into play in such a case. *See* 1 Pa.C.S. §1922(3).

There is no directed challenge to the punitive damages aspect here, however, and no assertion that Appellee had been vying, in good faith, for a reversal of precedent when the underlying land-ownership litigation was commenced and pursued. Rather, a far broader lawyer-immunity focus has been engrafted onto this case.[13] Responding to the matter as so framed, we decline to recognize generalized attorney immunity from the substantive principles of tort law embodied in the Dragonetti Act. *Accord* Pa. R.C.P. No. 1023.1, Note (depicting the Dragonetti Act as providing "additional relief from dilatory or frivolous proceedings").

In this regard, this Court frequently acknowledges the Legislature's superior resources and institutional prerogative in making social policy judgments upon a developed analysis. *See generally Seebold v. Prison Health Servs., Inc.*, 618 Pa. 632, 652–54 & n.19, 57 A.3d 1232, 1245–46 & n.19 (2012). In exercising the common law

---

[13] *Cf.* Gillian E. Metzger, *Facial Challenges and Federalism*, 105 COLUM. L. REV. 873, 881 (2005) (observing that a litigant makes "a partial facial challenge" by arguing that "a statute is unconstitutional in a particular range of applications, even if not unconstitutional in all or most").

decision-making function, this Court lacks the tools available to the Assembly -- such as investigations and the self-directed gathering of empirical evidence at public hearings -- and is confined to the adversarial, record-based system of judicial adjudication. Accordingly, judges plainly stand at a disadvantage in the substantive lawmaking process, which also, quite frankly, is often steeped in difficult political judgments, including choices among vital competing interests.

Consistent with these observations, we find that the policy arguments of Appellee and his *amici* are better presented to the Legislature. While this Court clearly retains a residual, common law role in substantive lawmaking, the Court cedes such power when the Assembly chooses to exercise its own constitutional prerogative to enact substantive legislation. *See, e.g., Sternlicht*, 583 Pa. at 163, 876 A.2d at 912.[14] In relation to the prior decisions referenced by the litigants, the judicial philosophy of this opinion may differ from predecessor ones, but we find nothing in the precedent that precludes our present holding.

In conclusion, in our considered judgment, Appellee has failed to establish that the Dragonetti Act clearly and palpably violates the Pennsylvania Constitution, or that this Court should *per se* immunize attorneys, as attorneys, from the application of the substantive tort principles promulgated by the political branch in the Dragonetti Act.[15]

---

[14] In terms of the arguments pertaining to the legislative decision to adjust the liability standard to subsume gross negligence, this Court's rules are not intended as a safe harbor for attorneys who cause harm to others via such elevated heedlessness. Similarly, while the Rules of Professional Conduct may describe lawyers' ethical obligations in a more objective fashion than is reflected in the Dragonetti Act's liability threshold, the interests of justice do not favor immunizing conduct undertaken with a subjectively wrongful state of mind. Indeed, the common law liability standard of malice certainly has subjective attributes.

[15] In light of our disposition, we need not address the Remedies Clause issue raised by Appellants' *amicus*, which, in any event, had not been presented by Appellants.

The order of the common pleas court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Justices Baer, Todd, Dougherty and Mundy join the opinion.

Justices Baer and Todd file concurring opinions.

Justice Wecht joins the substance of Justice Baer's concurrence but does not join the majority opinion.

Justice Donohue files a dissenting opinion.