**[J-18A-2021 and J-18B-2021] [MO: Baer, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| KEYSTONE RX LLC, | : | No. 27 EAP 2020 |
| | : | |
| | : | Appeal from the order of |
| v. | : | Commonwealth Court entered on |
| | : | December 12, 2019 at No. 1369 |
| | : | CD 2018 (reargument denied on |
| BUREAU OF WORKERS' COMPENSATION | : | January 30, 2020) affirming the |
| FEE REVIEW HEARING OFFICE | : | Order entered on September 12, |
| (COMPSERVICES INC./AMERIHEALTH | : | 2018 by the Bureau of Workers' |
| CASUALTY SERVICES) | : | Compensation at No. DSP- |
| | : | 7388753-4. |
| | : | |
| APPEAL OF: | : | ARGUED:  April 13, 2021 |
| COMPSERVICES/AMERIHEALTH | : | |
| CASUALTY SERVICES | : | |
| | : | |
| KEYSTONE RX LLC | : | No. 28 EAP 2020 |
| | : | |
| | : | Appeal from the order of |
| v. | : | Commonwealth Court entered on |
| | : | December 12, 2019 at No. 1369 |
| | : | CD 2018 (reargument denied on |
| BUREAU OF WORKERS' COMPENSATION | : | January 30, 2020) affirming the |
| FEE REVIEW HEARING OFFICE | : | Order entered on September 12, |
| (COMPSERVICES INC./AMERIHEALTH | : | 2018 by the Bureau of Workers' |
| CASUALTY SERVICES) | : | Compensation at No. DSP- |
| | : | 7388753-4. |
| | : | |
| APPEAL OF: BUREAU OF WORKERS' | : | ARGUED:  April 13, 2021 |
| COMPENSATION FEE REVIEW HEARING | : | |
| OFFICE | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                    **DECIDED:  December 22, 2021**

I join the Majority Opinion in full.

Today's disposition reflects the judiciary's obligation to defer to the legislature's policy choices. Remedies may be available to aggrieved providers like Keystone Rx that have been left out of the Utilization Review process of the Workers' Compensation Act, but these remedies do not include judicial re-writing of the Act.

Under the Act, Utilization Review allows employers, employees, and insurers to obtain an impartial determination of the "reasonableness or necessity" of a claimant's treatment. 77 P.S. 531(6)(i). After that initial determination, a party or a health care provider has the right to seek review. *Id.* § 531(6)(iv). This process examines the medical treatment under review, including services provided by non-treating providers, such as Keystone Rx, which dispensed medications pursuant to a physician's prescription. Such non-treating providers are not, however, included in the process.

The legislature could have included non-treating providers in the Utilization Review process. It did not do so. Instead, the General Assembly provided a remedy to non-treating providers that is limited to challenging the amount and timeliness of payment for treatment that is reasonable and necessary. *See* Maj. Op. at 15-16; *see also* 77 P.S. § 531(1)(i). The process for determining the reasonableness and necessity of treatment affords no role for non-treating providers, essentially shifting the cost of rendering treatment that is later determined not to be reasonable or necessary from the insurer or employer to the non-treating provider.

This scheme was legislated by the General Assembly. The legislature exercised its policy-making authority to decide who should be included in Utilization Review, and who should not. This is the function of our General Assembly: it makes social policy judgments and decides among competing interests. *Villani v. Seibert*, 159 A.3d 478, 492 (Pa. 2016) ("[T]his Court frequently acknowledges the Legislature's superior resources and institutional prerogative in making social policy judgments upon a developed

analysis."); *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) ("[I]t is for the legislature to formulate the public policies of the Commonwealth."). Whatever the potential inequity of this result, it is a matter of legislative discretion. It is not a field for judicial reformation.

It is not for the judiciary to usurp the General Assembly's policy-making authority and exceed the parameters of legislation by engrafting statutory requirements that the General Assembly chose to omit, even where sound reasons may appear to favor the creation of a mechanism omitted from the statute.[1] *Discovery Charter Sch. v. Sch. Dist. of Phila*, 166 A.3d 304, 318 (Pa. 2016) ("[I]t is not the province of the judiciary to augment the legislative scheme."); *Parker v. Children's Hosp. of Phila.*, 394 A.2d 932, 937 (Pa. 1978) ("[T]he power of judicial review must not be used as a means by which the courts might substitute its judgment as to public policy for that of the legislature."); *Glancey v. Casey*, 288 A.2d 812, 816 (Pa. 1972) ("Time and again, we have taken the position that the judiciary does not question the [w]isdom of the action of a legislative body.").

Because it was the legislature that, by design, made payment to non-treating providers contingent upon determinations of reasonableness and necessity, the remedy for the consequences of this decision also lies with the legislature. Entities left out of the Utilization Review process—including diagnostic testing facilities, durable medical equipment companies, laboratories, medical imaging centers, opticians, pharmacies, physical therapy centers, and visiting nurses—are free to petition the legislature for redress for payment for services rendered under a physician's orders. Keystone Rx's

---

[1] Of course, legislation cannot deprive any person of a protected property interest without due process of law. *See Am. Mfrs. Mutual Ins. v. Sullivan*, 526 U.S. 40, 59 (1999). As the Majority observes, there is no protected property interest in the payment of disputed medical bills before the treatment is deemed reasonable and necessary. *See* Maj. Op. at 15-16. Although Keystone Rx may have had an expectation of payment for prescriptions it dispensed, it had no protected property interest in those payments, and due process protections do not apply to mere expectations. *See id.* at 16.

policy-based arguments are for the policy-making branches. They are not for the judiciary.

Short of legislative intervention, non-treating providers will have to make the business decision of whether to continue providing services to workers' compensation claimants. Perhaps a reasonable business decision would be to eliminate the risk by refusing to fill prescriptions in workers' compensation cases, knowing and opting out of the risks involved in such transactions. As this case comes to us, however, Keystone Rx assumed the risk when it entered into its business, knowing the limitations involved, and elected to fill prescriptions for workers' compensation claimants whose treatment may ultimately prove non-compensable under the Act.

Non-treating providers might opt to continue providing services and spread the risk of non-payment, insure against it, or seek subrogation or payment from another insurer as the facts and circumstances may allow. Perhaps these providers might choose to pursue remedies directly against the injured workers. Although an injured employee is not responsible under the Act for reasonable and necessary treatment resulting from a work-related injury, it does not appear that any law precludes direct action against a customer whose injuries are not compensable under the Act. Where the Act is not implicated, any remedies Keystone Rx would have generally against its customers would presumably be available, including a breach of contract claim. Any argument that the Act or the accompanying regulations preclude directly billing an injured employee fall away once the injury or treatment is determined not to be compensable under the Act.[2]

---

[2] *See, e.g.*, 77 P.S. § 531(7) ("A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this act. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer."). Although the Bureau of Workers' Compensation's regulations prohibit balance billing, this prohibition pertains to "providers," which is regulatorily defined as "health care

Non-treating providers are free to re-calibrate their businesses to adjust to the legislature's decision to impose upon them the risk of non-payment for treatment that is later determined not to be reasonable or necessary. But we are not free to recalibrate the statutory law.

Justice Dougherty joins this concurring opinion.

---

providers." *See* 34 PA. CODE § 127.211(b) ("A provider may not bill for, or otherwise attempt to recover from the employe, charges for treatment or services determined to be unreasonable or unnecessary in accordance with the act or Subchapter C (relating to medical treatment review)."); *id.* § 127.3 (defining "provider" to mean a "health care provider"). Because Keystone Rx has never identified itself as a health care provider, this regulatory prohibition is inapplicable.