**[J-14A&B-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| MARY E. GLOVER, INDIVIDUALLY AND ON BEHALF OF OTHER SIMILARLY SITUATED FORMER AND CURRENT HOMEOWNERS IN PENNSYLVANIA, | : | No. 3 WAP 2015 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court entered April 23, 2014 at No. 938 |
| | : | WDA 2012, affirming the Order of the |
| Appellant | : | Court of Common Pleas of Allegheny |
| | : | County entered June 13, 2012 at No. |
| v. | : | GD 11-018015 |
| | : | |
| UDREN LAW OFFICES, P.C., A NEW | : | |
| JERSEY DEBT COLLECTOR, | : | ARGUED:  October 7, 2015 |
| | : | RESUBMITTED:  January 20, 2016 |
| Appellee | : | |
| | : | |
| EDELLA JOHNSON (A/K/A EDELLA | : | No. 4 WAP 2015 |
| ROBINSON, A/K/A EDELLA ROBINSON | : | |
| JOHNSON), ERIC JOHNSON, | : | |
| INDIVIDUALLY AND ON BEHALF OF | : | Appeal from the Order of the Superior |
| OTHER SIMILARLY SITUATED FORMER | : | Court entered April 23, 2014 at No. |
| AND CURRENT HOMEOWNERS IN | : | 1131 WDA 2012, affirming the Order of |
| PENNSYLVANIA, | : | the Court of Common Pleas of |
| | : | Allegheny County entered July 17, 2012 |
| | : | at No. GD 12-005395 |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHELAN HALLINAN & SCHMIEG, LLP, | : | ARGUED:  October 7, 2015 |
| | : | RESUBMITTED:  January 20, 2016 |
| Appellee | : | |

***OPINION***

**CHIEF JUSTICE SAYLOR**[1]                                    **DECIDED: JUNE 20, 2016**

---

[1] This matter was reassigned to this author.

In these consolidated appeals, the Court is asked to determine whether a law firm, representing a residential mortgage lender in connection with foreclosure proceedings, can be liable to a borrower for attorney's fees charged in violation of the Pennsylvania Loan Interest and Protection Law.

The Loan Interest and Protection Law,[2] in relevant part, limits the attorney's fees that a "residential mortgage lender shall contract for or receive . . . from a residential mortgage debtor." 41 P.S. §406. As a remedy for a violation of Act 6's protective provisions, Section 502 permits recovery of treble damages "in a suit at law against the person who has collected such excess interest or charges." *Id*. §502. "Person" is defined as "an individual, corporation, business trust, estate trust, partnership or association or any other legal entity, and shall include but not be limited to residential mortgage lenders." *Id*. §101.

First, we note that these cases were dismissed on preliminary objections in the nature of a demurrer. We therefore accept as true all well-pleaded material facts set forth in the complaints and any reasonable inferences therefrom. *See Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 607 Pa. 527, 558, 8 A.3d 866, 884 (2010). Appellant, Mary Glover, alleges that, as counsel for her residential mortgage lender ("RML"), Appellee, Udren Law Offices, PC ("Udren"), collected excessive and unearned fees in connection with mortgage foreclosure proceedings against her. Separately, EdElla and Eric Johnson raise similar claims against Phelan, Hallinan & Schmieg, LLP. Because the Johnsons stipulated that the outcome of their case is dependent upon the resolution

---

[2] Act of Jan. 30, 1974, P.L. 13, No. 6 (as amended 41 P.S. §§101-605) ("Act 6").

of Glover's, the cases were consolidated; accordingly, we resolve both appeals on the facts of Glover's case.

Glover entered into a residential mortgage in 2002 with Washington Mutual Bank.[3] Following Glover's unsuccessful attempts to obtain a loan modification due to financial difficulty, the bank initiated foreclosure proceedings. Udren took several actions on the bank's behalf, including advising Glover, via telephone, of her unpaid debt and demanding nearly $3,400 in missed payments and fees. Eventually, the parties entered into a loan modification agreement that increased Glover's principal balance, monthly payment, and repayment period. The increased principal included an amount of approximately $1,600 for escrow, attorney's fees, and other charges. Glover made monthly payments pursuant to the new modified agreement.

Glover ultimately filed a putative class action against Udren in the Court of Common Pleas of Allegheny County, alleging, *inter alia*, that Udren had violated Act 6 by charging unearned and excessive attorney's fees.[4] Because it was undisputedly not a residential mortgage lender under Act 6, *see* 41 P.S. §101 (defining "residential mortgage lender" as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt"), Udren filed preliminary objections, asserting that Glover had failed to state an actionable claim.

---

[3] At some point, Washington Mutual assigned Glover's mortgage to Wells Fargo. Neither bank is a party to the instant litigation.

[4] Glover's litigation against Udren, *et al*., has a long procedural history in both state and federal court. *See, e.g*., *Glover v. FDIC*, 698 F.3d 139 (3d Cir. 2012). Relevant here, Glover agreed to the dismissal, without prejudice, of her Act 6 claims against Udren from her federal lawsuit, to pursue them in state court.

The common pleas court agreed, finding that Udren's conduct as a debt collector was governed by the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §§2270.1-2270.6. *See Glover v. Udren*, No. GD-11-018015, *slip op.* at 5 (C.P. Allegheny June 13, 2012). Nevertheless, the common pleas court noted, the FCEUA does not apply to attorneys acting within the scope of their legal representation. *See* 73 P.S. §2270.3 (defining "debt collector" to include, *inter alia*, "[a]n attorney . . . attempt[ing] to collect a debt . . . except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment"). In terms of Act 6, because Section 406 refers only to residential mortgage lenders, the common pleas court concluded that any violation of that provision does not give rise to a remedy against Udren under Section 502. It therefore sustained preliminary objections and dismissed Glover's complaint. While addressing related claims under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1 to 201-9.3, the common pleas court stated, "the Legislature would not have intended for legislation that is not specifically directed to debt collectors to provide a remedy for conduct that is explicitly excluded from legislation that is directed to debt collectors." *Glover*, No. GD-11-018015, *slip op.* at 10-11.[5]

Glover appealed, arguing that, because Act 6 permits a borrower to recover treble damages from a "person" who collects excess fees in connection with the mortgage foreclosure process, and defines "person" broadly to "include but not be

---

[5] Also in reference to these claims, the court noted that Glover had not averred that she had paid any charges directly to Udren, rather than to Washington Mutual or Wells Fargo. *See, e.g., id.* at 11 n.11.

limited to" residential mortgage lenders, the common pleas court had improperly narrowed the scope of the statute's protections.

A divided panel of the Superior Court affirmed, holding that, because Section 406's plain language regulates only the conduct of residential mortgage lenders, Section 502 does not authorize an action against a lender's counsel for a Section 406 violation. *See Glover v. Udren Law Offices, PC*, 92 A.3d 24 (Pa. Super. 2014). The majority rejected Glover's contention that "person," in Section 502, evidenced a legislative intent to make a broad set of actors liable for Section 406 violations, because the term was necessary to address, throughout Act 6's various provisions, conduct by actors other than residential mortgage lenders. *See id.* at 30-31 ("While the majority of the provisions in Act 6 apply to residential mortgage transactions, Act 6 also addresses conduct by actors other than residential mortgage lenders. . . . Thus, the definition of 'person' in section 101 makes clear that when the term 'person' is used, it is not limited to residential mortgage lenders."). The majority reasoned that, had the Legislature intended Section 406 to reach law firms acting on behalf of residential mortgage lenders, it would have used express language to that effect in the text.

Judge, now Justice, Wecht dissented from the majority's resolution of this issue, construing the statute broadly to effect its remedial purpose of curtailing abuses in the residential mortgage industry. *See id.* at 36 (Wecht, J., concurring and dissenting) (citing *Roethlein v. Portnoff Law Assocs., Ltd.*, 623 Pa. 1, 12, 81 A.3d 816, 822 (2013)). When the statute's provisions are read in conjunction with one another, he opined, their plain language supports Glover's position. *See id*. at 37 ("Section 406 prohibits the

*receipt* of improper charges and interest, while section 502 prohibits the *collection* of such charges." (emphases in original)).

Judge Wecht also expressed concern that the majority's decision would permit residential mortgage lenders to easily avoid regulation, since they often employ proxies -- such as law firms, serving as both legal counsel and debt collector -- to pursue payment delinquencies. By using the word "person" in Section 502, he continued, the Legislature indicated its intent to broaden liability for the conduct proscribed in Article IV, including Section 406. "What it is improper for an RML to receive, it is improper for an RML's proxy to collect," he articulated. *Id*. at 37.

This Court granted the appeal to resolve whether Section 502 of Act 6 provides a remedy against any "person" who has collected unlawful attorney's fees, or whether its reach, in this respect, is limited to residential mortgage lenders. *See Glover v. Udren Law Offices, PC*, ___ Pa. ___, 108 A.3d 28 (2015) (*per curiam*).

Glover argues that, in order to effect its purpose of protecting homeowners during the mortgage foreclosure process, the Legislature created, in Section 502, a remedy for the misconduct of residential mortgage lenders and related entities. According to Glover, Act 6's plain language belies the Superior Court majority's narrow construction, as it contemplates the liability of a "person," unambiguously and broadly defined. Udren's conduct is actionable because Udren is a "person" that collected illegal fees in connection with its representation of the residential mortgage lender in foreclosure proceedings, she alleges.

Glover continues that the Superior Court majority's interpretation of Act 6 holds only residential mortgage lenders that collect their own debt accountable for the

collection of illegal attorney's fees. Consequently, she posits, a lender's use of a surrogate renders any violation of Section 406 irremediable -- an outcome that the Legislature presumably did not intend and which frustrates the statute's purpose.

In their separate brief, the Johnsons incorporate the arguments advanced by Glover.[6]

In a brief as *amici curiae* in support of reversal, AARP, National Consumer Law Center, and Community Legal Services of Philadelphia argue that, under the Superior Court's unduly narrow interpretation, the prohibitions of Act 6 are too easily evaded by residential mortgage lenders who can -- and regularly do -- hire attorneys and other third parties to conduct debt collection and foreclosures. According to *amici*, homeowners are often charged unearned attorney's fees, in violation of Act 6, that increase the cost of averting foreclosure. *Amici* continue that the Pennsylvania Legislature sought to rectify abuses by several parties to the system, including residential mortgage lenders and their proxies. They conclude, therefore, that Act 6's provisions should be construed broadly to effectively prevent the harmful practices that the Legislature prohibited.

Udren asserts that the language of Section 406 plainly does not apply to attorneys representing residential mortgage lenders. It maintains that Section 502 is a generic civil-action provision, and a construction that expands Section 406 liability would require judicial revision of the statutory language. Further, relying on the common pleas

---

[6] Additionally, they ask the Court to hold that Act 6 applies to their mortgage, which exceeded the statutory limit of $50,000 when executed, because it did not enter foreclosure until 2009, after the statute was amended to raise the qualifying amount. This issue was not before the common pleas court or the Superior Court, nor was it presented in the petition for allocatur. Accordingly, we do not consider it.

court's suggestion, *see Glover*, No. GD-11-018015, *slip op.* at 10-11, Udren claims that the Legislature would not have impliedly created liability for attorneys as debt collectors in Act 6, a usury statute, while expressly exempting them from such liability in the FCEUA, which is designed to regulate debt collection specifically. *See* 73 P.S. §2270.3.

Udren also contends that the Superior Court majority's interpretation would not leave Glover without a remedy, as demonstrated by her federal lawsuits against Washington Mutual and Wells Fargo. Moreover, Udren observes, to the extent that it acted outside the scope of an attorney prosecuting a lawsuit to judgment, the FCEUA contemplates its liability. It concludes that, in any event, as Glover does not dispute that she paid the disputed fees to Wells Fargo, not Udren, any Act 6 claim should lie against Wells Fargo.

Because the parties ask us to interpret Act 6, our object is to ascertain the Legislature's intent, giving effect to all of the relevant statutory provisions. *See* 1 Pa.C.S. §1921(a). The best indication of legislative intent is generally the statutory language itself. *See Burke ex rel. Burke v. Independence Blue Cross*, 628 Pa. 147, ___, 103 A.3d 1267, 1272 (2014).

Reading Sections 101, 406, and 502 cohesively, it is evident that Glover's claims are cognizable under Act 6. The plain and explicit terms permit "[a] person who has . . . paid charges prohibited or in excess of those allowed by this act" to recover treble damages "in a suit at law against *the person* who has collected such excess . . . charges." 41 P.S. §502 (emphasis added). Significantly, as well, the Legislature expressly defined "person" to "include *but not be limited to* residential mortgage lenders." *Id.* §101 (emphasis added). Under a straightforward application of the

statute, then, Section 406 restricts the circumstances under which residential mortgage lenders may contract for or receive fees, while Section 502 provides a broad remedy against anyone who has collected such fees. Accordingly, consistent with the position expressed in the Superior Court dissent, we conclude that a borrower may recover under Section 502 from any entity -- not solely the residential mortgage lender -- that collects excessive attorney's fees in connection with a foreclosure.

This approach also is in keeping with the remedial purposes of the statute, per which the enactment should be construed liberally to effectuate such aims. *See Commonwealth ex rel. Creamer v. Monumental Props., Inc.*, 459 Pa. 450, 459, 329 A.2d 812, 816 (1974). As this Court has previously explained, "Act 6 is a usury law, designed to protect borrowers against improper mortgage lending practices." *Roethlein*, 623 Pa. at 14, 81 A.3d at 824. In Article IV, the Legislature identified industry customs it deemed particularly pernicious, such as the initiation of foreclosure with insufficient notice, the imposition of a penalty for prepayment, and the collection of unreasonable attorney's fees. *See* 41 P.S. §§403, 405, 406. In order to enforce these protective provisions, the Legislature created strong remedies and penalties such as treble damages, shifting of litigation costs, and a $10,000 fine. *See id.* §§502, 503, 505. It further directed that these mechanisms are intended to supplement any remedies and penalties provided by any other statute. *See id.* §507.

As Judge Wecht noted, the use of debt collectors and other third parties is common in the mortgage industry, *see Glover*, 92 A.3d at 36 (Wecht, J., concurring and dissenting), as well as in the broader context of lending, generally. In the FCEUA, the Legislature sought directly to curtail abuses by these third parties -- including attorneys,

when their actions were taken in their capacities as debt collectors. *See* 73 P.S. §2270.3. In the statute at issue here, the Legislature's use of the term "person" in Section 502, which it defined to include actors other than residential mortgage lenders, suggests an intent to hold accountable *any* of the entities that might have engaged in the abusive practices specifically prohibited in Article IV.

The plain language of the statute does not exempt attorneys, debt collectors, or any other third parties from liability in this regard. In contrast, the Superior Court majority's holding effectively imposes a non-textual limiting construction on the word "person," as it appears in Section 502. Such a position contravenes the core and conventional principle of statutory construction that, when a statute's terms are plain, the courts are bound to enforce them. *See* 1 Pa.C.S. §1921(b).

Furthermore, we reject Udren's suggestion that, where conduct is excluded from one regulatory regime, it necessarily must go unregulated in others. *See* Brief for Appellees at 20-24. In fact, there are various instances of overlapping, coordinated, and uncoordinated protections contained within the diverse range of state and federal regulatory statutes, particularly those governing consumer affairs. *See, e.g.*, 73 P.S. §2270.4(a) (providing that conduct proscribed by the federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692-1692p, is also unlawful under the FCEUA); 42 Pa.C.S. §2524(c) (prohibiting the unauthorized practice of law and deeming it a violation of the UTPCPL). Conduct that is omitted from, or even permitted by, one regulatory framework may nonetheless violate another. *See POM Wonderful LLC v. Coca-Cola Co.*, ___ U.S. ____, 134 S. Ct. 2228 (2014) (holding that a company may bring a claim against a competitor under the Lanham Act, 15 U.S.C. §1125(a)(1), for misleading

product labeling, even where the challenged labeling may be permitted under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301-399f). Indeed, "[w]hen two statutes complement each other" a construction that allows one to preclude the operation of the other "would show disregard for the [legislative] design." *Id*. at ___, 134 S. Ct. at 2238; *see also J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Int'l, Inc.*, 534 U.S. 124, 144, 122 S. Ct. 593, 605 (2001) ("[W]e can plainly regard each statute as effective because of its different requirements and protections.").

Notably, the residential mortgage arena is one, within the broader landscape of consumer protection, in which the Legislature has provided directed and enhanced protections. Thus, whatever liabilities and/or exclusions there may be under other consumer-protection statutes, Act 6 expressly imposes a specific liability upon any person who has collected attorney's fees from a residential mortgage debtor in excess of that which the statute otherwise permits. By the same token, the fact that a law firm potentially faces liability under some other regulatory framework is irrelevant to whether Act 6 entitles Glover to damages, except with respect to purely overlapping monetary relief.

In the dissent's view, Section 502 affords relief against only a person who has "violate[d]" a relevant substantive provision of law, such as Section 406. Dissenting Opinion, *slip op.* at 5. As explained above, however, Section 502 instead specifically creates a cause of action against persons who have "collected" excess interest or charges. 41 P.S. §502. Had the Legislature intended to restrict Section 502 liability solely to those persons who have violated other provisions of the law, it could readily have so prescribed. Since, however, *collection* is the express and controlling litmus

under Section 502, per the statute, Udren's liability ultimately must turn on whether or not it has "collected" excess or improper charges. *Id.*

Presently, we offer no opinion concerning the meaning of the term "collected," as employed in Section 502, because the matter is not sharply in focus in this appeal. Rather, the appeal was allowed to consider the limiting construction on the term "person" which the Superior Court imposed, *i.e.*, "[d]oes Act 6, §502 provide a remedy, as the explicit language of the statute establishes, against any statutorily defined 'person' collecting statutorily prohibited fees on behalf of residential mortgage lenders?" *Glover v. Udren Law Offices, P.C.*, ___ Pa. ___, 108 A.3d 28 (2015) (*per curiam*). We hold that it does, according to the enactment's plain language.

Accordingly, the order of the Superior Court is reversed and the matter is remanded for further proceedings.


Justices Todd and Dougherty join the opinion.

Justice Baer files a dissenting opinion.

Justices Donohue and Wecht did not participate in the consideration or decision of this case.