J-A21008-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| MARY E. GLOVER, INDIVIDUALLY AND ON BEHALF OF OTHER SIMILARLY SITUATED FORMER AND CURRENT HOMEOWNERS IN PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| UDREN LAW OFFICES, P.C., A NEW JERSEY DEBT COLLECTOR, | |
| Appellee | No. 1953 WDA 2016 |

Appeal from the Order Entered November 29, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-11-018015

BEFORE: BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.: FILED NOVEMBER 20, 2017

Appellant, Mary E. Glover, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania, appeals from the trial court's November 29, 2016 order sustaining Appellee's, Udren Law Offices, P.C., a New Jersey debt collector (hereinafter "Udren"), preliminary objections based on collateral estoppel. We affirm.

This case has a long, convoluted history. We begin by summarizing the factual allegations set forth in Ms. Glover's class action complaint underlying this appeal. Ms. Glover entered into a residential real estate loan transaction with Washington Mutual Bank, F.A (referred to herein as "WaMu Bank") on August 2, 2002, in which she agreed to repay a $9,997 loan to WaMu Bank

(or its mortgage and note successors or assigns) by making monthly principal and interest payments of $67.35 over a 30-year period. See Complaint, 8/31/2011, at ¶¶ 7, 8. In March 2005, Ms. Glover sustained injuries in an automobile accident and suffered a significant loss of income as a result. Id. at ¶ 9. Thereafter, she made a request to WaMu Bank for a loan modification to reduce her monthly payment. Id. In response, Washington Mutual Home Loans (referred to herein as "WaMu Home Loans") — a wholly owned subsidiary of WaMu Bank — demanded that she pay $559.15, which represented three overdue monthly payments plus three late charges, or else her home would be "sold by the Sheriff to pay off the mortgage debt[.]" Id. at ¶¶ 5, 10.[1] In order to save her home, Ms. Glover entered into a Forbearance Agreement with WaMu Bank, in which it agreed to postpone Ms. Glover's monthly payments for four months, and reevaluate Ms. Glover's application for financial assistance on April 1, 2006. Id. at ¶ 11. However, instead of waiting until April 1, 2006, to reevaluate Ms. Glover's application, WaMu Home Loans notified Ms. Glover on March 14, 2006, that her application for a loan work-out was denied. Id. at ¶ 12.

Further, at some point between March 14, 2006 and April 10, 2006, an attorney for Udren called Ms. Glover and advised her that she needed to pay $1,700 for about eleven months of missed payments, and additional

_____

[1] Although Ms. Glover distinguishes WaMu Bank from WaMu Home Loans in her complaint, the parties seem to collectively refer to them as "WaMu" on appeal. Thus, when we discuss them infra, we do the same.

attorney's fees and costs of approximately $1,697.28. Id. at ¶ 13. Thereafter, on April 10, 2006, Udren filed a foreclosure complaint, asserting a claim against Ms. Glover for $12,652.36. Id. at ¶¶ 14, 15. In the foreclosure complaint, Udren alleged that Ms. Glover owed $1,855 for collection costs, which included a title report, court costs, and attorney's fees. Id. at ¶ 16. Ms. Glover claimed that the court costs and attorney's fees demanded by Udren had not been incurred, and the foreclosure complaint did not set forth facts regarding how such amounts were calculated. Id. at ¶¶ 17, 18.

On June 7, 2006, Ms. Glover accepted a loan modification agreement from WaMu Home Loans. Id. at ¶¶ 22, 26. Further, WaMu Home Loans informed Ms. Glover that she owed $3,696 for "foreclosure fees & costs[,]" and demanded a check in that amount. Id. at ¶¶ 22, 23. Ms. Glover did not remit a $3,696 check, but neither WaMu Bank nor WaMu Home Loans subsequently notified her that such payment was required, or that they did not consider the loan modification agreement accepted because of her failure to pay $3,696. Id. at ¶ 24.

Later, in November 2006, WaMu Home Loans informed Ms. Glover that starting December 1, 2006, Wells Fargo Home Mortgage ("Wells Fargo") would become her servicer with respect to subsequent monthly payments. Id. at ¶ 27. Ms. Glover received several letters from Wells Fargo indicating that it did not intend to honor the June 7, 2006 loan modification agreement she entered into with WaMu Home Loans. Id. at ¶ 28. Wells Fargo proposed multiple loan modification agreements to Ms. Glover during 2007, but she found them all

financially impossible to accept. Id. Ms. Glover therefore made payments to Wells Fargo pursuant to the terms of the June 7, 2006 loan modification agreement with WaMu Home Loans. Id.

On January 4, 2008, Ms. Glover and Wells Fargo finally entered into a loan modification agreement. Id. at ¶ 29. Ms. Glover thereafter made payments pursuant to the January 4, 2008 loan modification agreement, which Wells Fargo accepted. Id. at ¶ 31. In light of the January 4, 2008 loan modification agreement, WaMu Bank no longer had any interest in Ms. Glover's debt. Id. at ¶ 32.

On June 8, 2008, Ms. Glover filed a complaint in the Court of Common Pleas of Allegheny County against Udren and several others, as part of a case initially entitled Glover v. Washington Mutual Bank, F.A., et al., Civil Action No. GD 08-011474. See Complaint, 8/31/2011, at ¶ 36. WaMu Bank filed a Notice of Removal on July 14, 2008, and the case proceeded in federal court. Id. at ¶¶ 36, 37.[2] There, Ms. Glover advanced claims against Udren under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.4, the Pennsylvania Loan Interest and Protection Act ("Act 6"), 41 P.S. § 101 et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-9.2. Id. at ¶ 37. The federal court

_____

[2] According to Ms. Glover, "[t]he Office of Thrift Supervision ... closed WaMu Bank as a failed institution on September 25, 2008, and appointed the Federal Deposit Insurance Corporation ... as Receiver." Complaint, 8/31/2011, at ¶ 4.

ultimately dismissed all claims against Udren except for state law counts under Act 6 and the UTPCPL. Id. at ¶ 38. The parties eventually entered into a stipulation seeking an entry of final judgment for the dismissed claims against Udren, and a voluntary dismissal without prejudice for the remaining claims, i.e., the Act 6 and UTPCPL claims, against it. See id. at ¶ 42. In entering the stipulation, Ms. Glover and Udren had the joint expectation that Ms. Glover would reassert the Act 6 and UTPCPL claims in state court, and file an appeal regarding the other dismissed claims in federal court. Id. at ¶¶ 39, 40.[3]

On August 31, 2011, Ms. Glover filed the complaint underlying this appeal, where she reasserted the Act 6 and UTPCPL claims against Udren that the federal court dismissed without prejudice. See id. at ¶ 42. In short, she maintains that Udren "has collected unlawful charges from Ms. Glover, including unincurred attorney fees based on a flat-rate without court authorization, prior to a time when any fees should have been collected, in violation of the contract and state law." Id. at ¶ 35. On October 21, 2011, Udren filed preliminary objections, which the trial court sustained. It dismissed Ms. Glover's complaint with prejudice on June 13, 2012. Specifically, in dismissing Ms. Glover's Act 6 claims, the trial court explained:

> [Ms. Glover] is pursuing a private cause of action under Act 6 pursuant to Section 502 of Act 6 which permits a person who has paid charges prohibited by or in excess of those allowed by law to recover the amount of the excess charges in a lawsuit against the

---

[3] We note that the litigation against the other defendants, including Wells Fargo, continued in federal court.

person who collected such excess charges.  This Section reads as follows:

§ 502.  Usury and excess charges recoverable

A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a lawsuit against the person who has collected such excess interest or charges.

[41 P.S. § 502.]

Under the structure of Act 6, a person may recover damages under Section 502 only upon a showing that the defendant charged fees in violation of other provisions of Act 6 or otherwise by law.  Section 406 is the provision in Act 6 upon which [Ms. Glover] relies to support her claims under Section 502.  This provision reads as follows:

§ 406. Attorney's fees payable

With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

(1) Reasonable fees for services included in actual settlement costs.

(2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3) Prior to commencement of foreclosure or other legal action attorneys' fees are reasonable and actually not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.  (Emphasis added).

[41 P.S. § 406.]

Section 406 regulates only the fees that a residential mortgage lender may contract for or receive. A residential mortgage lender is defined in Section 101 of Act 6 as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt." [41 P.S. § 101. Udren] never lent money to [Ms. Glover] or obtained a residential mortgage from [Ms. Glover]. Thus, [Udren] is not a residential mortgage lender; [Udren] is, instead, a debt collector governed by Pennsylvania's Fair Credit Extension Uniformity act, 73 P.S. § 2270.1 et seq.[5]

[5] In this litigation, [Ms. Glover] does not allege that [Udren] violated any provisions of the Fair Credit Extension Uniformity Act.

Since [Ms. Glover] relies solely on Section 406, since Section 406 applies only to residential mortgage lenders, and since [Udren] is not a residential mortgage lender, I am dismissing [Ms. Glover's] claims raised in Counts I-IV for failure to plead any violations of Act 6 that would allow recovery under Section 502.

Trial Court Opinion, 6/13/2012, at 3-5 (some footnotes omitted; emphasis in trial court's opinion). In addition, the trial court dismissed Ms. Glover's remaining claims under the UTPCPL. See id. at 7-14.

Ms. Glover filed a timely appeal to this Court, and we affirmed the trial court's order on April 23, 2014. In short, we agreed with the trial court that because "Udren is not a residential mortgage lender, it cannot violate section 406." Glover v. Udren Law Offices, P.C., 92 A.3d 24, 29 (Pa. Super. 2014). Moreover, "[w]e reject[ed] the notion that by use of the term 'person' in section 502, the Legislature inferentially expanded the scope of potential violators of section 406 of the Act." Id. Thereafter, Ms. Glover filed a petition for allowance of appeal to our Supreme Court, which was granted on January 13, 2015.

While Ms. Glover's appeal was pending before our Supreme Court, her federal litigation against Wells Fargo, among others, continued. On October 14, 2015, the U.S. Court of Appeals for the Third Circuit issued an opinion, in which it affirmed the entry of summary judgment in favor of Wells Fargo on Ms. Glover's Act 6 claim. It stated:

> Section 406 of Act 6 allows a residential mortgage lender to contract for or receive from the mortgage debtor a reasonable fee actually incurred in connection with foreclosure actions. Even assuming Wells Fargo is a "residential mortgage lender" under § 406, [Ms.] Glover has failed to present evidence on which a reasonable jury could conclude that she was charged attorney's fees not incurred or permitted under the loan documents and, more significantly, that she paid any such fees. Thus, she has not shown that there is a genuine issue of material fact for the jury to resolve in connection with her Act 6 claim and so we will affirm summary judgment in Wells Fargo's favor….

Glover v. Wells Fargo Home Mortg., 629 Fed.Appx. 331, 343 (3d Cir. 2015) (emphasis added; internal citation omitted).

After the Third Circuit's decision in the federal Glover case, our Supreme Court issued its opinion in Ms. Glover's case against Udren on June 20, 2016. Glover v. Udren Law Offices, P.C., 139 A.3d 195 (Pa. 2016). In that opinion, our Supreme Court reversed the order sustaining Udren's preliminary objections on Ms. Glover's Act 6 claims, explaining that "[u]nder a straightforward application of the statute, … Section 406 restricts the circumstances under which residential mortgage lenders may contract for or receive fees, while Section 502 provides a broad remedy against anyone who

has collected such fees." Id. at 199-200.[4]  Thus, in contrast to the trial court and this Court's prior determinations, our Supreme Court "conclude[d] that a borrower may recover under Section 502 from any entity — not solely the residential mortgage lender — that collects excessive attorney's fees in connection with a foreclosure."  Id. at 200.  In responding to the Dissent's position that Section 502 provides relief only to a person who has violated some other substantive provision of the law, see id. at 201, the Supreme Court's Majority observed that "collection is the express and controlling litmus under Section 502...."  Id. (emphasis in original).  It then remanded the case to the trial court for further proceedings.  Id.

Following remand of this case to the trial court, Udren filed preliminary objections to the complaint again, arguing that it should be dismissed based on, inter alia, collateral estoppel, given the Third Circuit's determination that Ms. Glover "had not proven that she paid any illegal fees to anyone."  See Udren's Preliminary Objections, 10/5/2016, at ¶ 20 (emphasis in original). Relying on the Third Circuit's opinion, the trial court agreed, determining:

> The federal Glover case involved the identical Glover plaintiff as in this matter, suing Wells Fargo ... for improperly charging fees in connection with her mortgage loan under 41 P.S. §§ 406 and 502. The federal case involved identical fees and an identical fact pattern on which Ms. Glover now sues in this court.[1]  The Third Circuit affirmed the district court's grant of summary judgment in favor of Wells Fargo, finding that "[Ms.] Glover has failed to present evidence on which a reasonable jury could conclude that

_____

[4] We note that this Court affirmed the dismissal of Ms. Glover's claims under the UTPCPL, and our Supreme Court did not consider her UTPCPL claims on appeal.

she was charged with attorney's fees not incurred or permitted under the loan documents and, more significantly, that she paid any such fees." Glover v. Wells Fargo Home Mortg., 629 Fed. Appx. at 343.

[1] In fact, the present case against Udren began as a part of the federal litigation, but was severed and re-filed in this court via consent of the parties in order to proceed independent of the federal litigation.

The doctrine of collateral estoppel may be invoked to preclude a party from litigating an issue that was previously litigated unsuccessfully in an action with another party. The Pennsylvania Supreme Court has identified four elements requisite to maintaining a plea of collateral estoppel: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)).

In the current action, [Ms. Glover] contends that Udren has unlawfully "collected" improper fees. Every aspect of the factual underpinning of this claim is identical to that presented in the federal action.

The first element is met because the issue of whether [Ms. Glover] was charged and paid unlawful fees is identical in both actions. [Ms. Glover] must prove that she was charged and paid unlawful fees in order to recover against Udren for "collecting" the same.

The second element is met because the Third Circuit opinion was final and on the merits.[2]

[2] See Glover v. Wells Fargo Home Mortg., 136 S.Ct. 2388 (2016) (denying certiorari).

The third element is met because [Ms.] Glover is the same plaintiff in both actions.

The fourth element is met because [Ms. Glover] had a full and fair opportunity to litigate these issues in both the federal district court and the Third Circuit. [Ms. Glover's] perceived injustice in the

federal district court's management of the case was extensively addressed by the Third Circuit in its opinion. I decline to review the district court's case management because [Ms. Glover] has already availed herself of the proper appellate court for this issue.

Trial Court Opinion (TCO), 12/29/2016, at 1-3. Based on this reasoning, the trial court sustained Udren's preliminary objections and dismissed Ms. Glover's complaint.

On December 28, 2016, Ms. Glover filed a timely notice of appeal. The trial court did not direct Ms. Glover to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Presently, Ms. Glover raises the following issues for our review:

1. Did the lower court err when it did not decide the issue of collection under Act 6, § 502 mandated by the Pennsylvania Supreme Court after that Court had already been presented with Udren's collateral estoppel argument?

2. Is Udren judicially estopped from arguing that the Act 6 issues litigated in federal court against Wells Fargo are identical to those litigated against it in state court?

3. Does the collateral estoppel doctrine bar [Ms. Glover's] Act 6 claims?

Ms. Glover's Brief at 2-3.

Initially, we set forth our standard of review:

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in

- 11 -

which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

Freundlich & Littman, LLC v. Feierstein, 157 A.3d 526, 530 (Pa. Super. 2017) (citation omitted).

First, Ms. Glover argues that the trial court "erred when it did not decide the issue of collection under Act 6[, §] 502 mandated by the Pennsylvania Supreme Court," as she maintains that the Court "ordered the trial court to determine the meaning of the word 'collect' under Act 6, § 502…." Ms. Glover's Brief at 20 (unnecessary emphasis and capitalization omitted). Further, she specifically notes that our Supreme Court's "mandate to interpret the term 'collect' was issued after the federal judgment was entered in federal Glover in favor of Wells Fargo on September 2, 2014. In other words, when the Pennsylvania Supreme Court entered its mandate, it was well-aware of all of the facts that occurred with respect to the federal action." Id. at 20-21. Thus, according to Ms. Glover, our Supreme Court "elected not to credit" Udren's collateral estoppel defense, and "[b]y entering an opinion based on collateral estoppel instead of interpreting the meaning of collect under § 502, the lower court entered an opinion based on an issue outside of the mandate…." Id. at 17, 22.[5]

_____

[5] We recognize that the issue of whether a court properly interpreted a remand order is a matter of law, and our scope of review is plenary. In re Lokuta, 11 A.3d 427, 438 (Pa. 2011) (citations omitted).

- 12 -

At the outset, it appears that Ms. Glover did not raise this "mandate" issue below. Accordingly, we deem it to be waived.[6] See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Cornerstone Land Development Co. of Pittsburgh LLC v. Wadwell Group, 959 A.2d 1264, 1270 (Pa. Super. 2008) (finding an issue is waived where the appellant "did not raise this argument in the brief it filed in opposition to [the] appellees' preliminary objections") (citations omitted).[7]

Additionally, even if this issue were not waived, we would still consider it to be meritless. We acknowledge that "[a] trial court has an obligation to comply scrupulously, meticulously, and completely with an order of the Supreme Court['s] remanding a case to the trial court." Commonwealth v. Williams, 877 A.2d 471, 474 (Pa. Super. 2005) (citation omitted). Nevertheless, we would disagree with Ms. Glover that the Supreme Court's

_____

[6] In her reply brief, Ms. Glover asserts that she preserved this issue before the trial court. See Ms. Glover's Reply Brief at 11 n.2. However, she provides citations to the record where she discussed the meaning of "collect[,]" and merely stated that "[t]he statutory question before this [c]ourt is construction of the term 'collected' so as to determine whether Udren was 'a person that collected' under the statute[.]" See id. These cites do not demonstrate that Ms. Glover raised to the trial court that Udren's collateral estoppel argument was outside of the Supreme Court's mandate on remand, or that the Court had already rejected Udren's collateral estoppel defense.

[7] See also Steiner v. Markel, 968 A.2d 1253, 1256-57 (Pa. 2009) ("This Court has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties.") (citations omitted).

order mandated the trial court to consider the meaning of "collected" in Section 502. In its review of the case at bar, our Supreme Court explained:

> In the dissent's view, Section 502 affords relief against only a person who has "violate[d]" a relevant substantive provision of law, such as Section 406. As explained above, however, Section 502 instead specifically creates a cause of action against persons who have "collected" excess interest or charges. Had the Legislature intended to restrict Section 502 liability solely to those persons who have violated other provisions of the law, it could readily have so prescribed. Since, however, collection is the express and controlling litmus under Section 502, per the statute, Udren's liability ultimately must turn on whether or not it has "collected" excess or improper charges.
>
> Presently, we offer no opinion concerning the meaning of the term "collected," as employed in Section 502, because the matter is not sharply in focus in this appeal. Rather, the appeal was allowed to consider the limiting construction on the term "person" which the Superior Court imposed, i.e., "[d]oes Act 6, § 502 provide a remedy, as the explicit language of the statute establishes, against any statutorily defined 'person' collecting statutorily prohibited fees on behalf of residential mortgage lenders?" Glover v. Udren Law Offices, P.C., … 108 A.3d 28 ([Pa.] 2015) (per curiam). We hold that it does, according to the enactment's plain language.
>
> Accordingly, the order of the Superior Court is reversed and the matter is remanded for further proceedings.

Glover, 139 A.3d at 201 (some internal citations omitted; emphasis and some brackets in original).

Here, the Supreme Court's order generally remands the matter for "further proceedings." It does not specifically direct the trial court to interpret the meaning of "collected" to the exclusion of all other possible issues. Instead, we view the Supreme Court's discussion of the term "collected" to primarily be a response to the Dissent's view that "the broad general remedy

- 14 -

provided by Section 502 is confined by the relevant substantive provision allegedly violated." Id. at 202 (Baer, J., dissenting). While the Court's observation may have also been intended to guide the trial court in any further statutory analysis required to dispose of the matter, we would decline to regard its opinion as foreclosing the trial court from considering Udren's collateral estoppel argument.

Moreover, we would also disagree with Ms. Glover's assertion that the Supreme Court had already rejected Udren's collateral estoppel defense. As the Court acknowledged above, it allowed the appeal in order to examine a particular, narrow question — that is, does Section 502 "provide a remedy, as the explicit language of the statute establishes, against any statutorily defined 'person' collecting statutorily prohibited fees on behalf of residential mortgage lenders?" Id. at 201. Further, the collateral estoppel issue had not yet been before the court of common pleas or this Court.[8] In addition, the Supreme Court's opinion provides no analysis of whether collateral estoppel bars Ms. Glover's claim, which further indicates that it did not contemplate that issue. Based on the foregoing, we would determine that the trial court did not err in considering Udren's collateral estoppel argument.

Second, Ms. Glover contends that "Udren is judicially estopped from arguing that Ms. Glover's Act 6 claim is identical to the Act 6 claims in the

_____

[8] See Glover, 139 A.3d at 198 n.6 (declining to address another issue because it "was not before the common pleas court or the Superior Court, nor was it presented in the petition for allocator").

- 15 -

federal Glover action against Wells Fargo." Ms. Glover's Brief at 22 (unnecessary emphasis and capitalization omitted). She says that "[i]n the federal action, Udren repeatedly argued that [the] Act 6 claims asserted against it were fully unrelated to those asserted against Wells Fargo[,]" and alleges that "[t]he federal court expressly adopted Udren's position in the consented-to motion for entry of final judgment pursuant to Fed.R.Civ.P. 54(b)." Id. (citations omitted).[9] Ms. Glover advances that "[b]ecause of Udren's multitude of representations in federal Glover (that the Act 6 claims against Wells Fargo and itself were and are not related) and the federal court's adoption of this view, Udren should have been judicially estopped from arguing the exact opposite position." Id. at 23-24.

_____

[9] Federal Rule of Civil Procedure 54(b) sets forth the following:

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

To begin, we believe this issue is likewise waived. Ms. Glover submits that she raised this argument below; however, our review of the record does not demonstrate that she raised judicial estoppel before the trial court, and the trial court does not discuss judicial estoppel in its opinion. See Pa.R.A.P. 302(a); see also Ms. Glover's Brief at 24 ("Ms. Glover argued to the lower court that Udren is estopped from relying on the collateral estoppel doctrine at the argument on Preliminary Objections from which this appeal is taken.").[10]

Notwithstanding, even if we did not deem this issue waived, we would find Ms. Glover's judicial estoppel argument to be unpersuasive. "Our Supreme Court has held that as a general rule, a party to an action is estopped

_____

[10] In support of this assertion, Ms. Glover cites to the portion of her Memorandum of Law in Support of Opposition to Preliminary Objections addressing why her Act 6 claims are not barred by judicial privilege. See Ms. Glover's Brief at 24 (citing to pages 347-350 of the reproduced record). Furthermore, Ms. Glover claims that she raised her judicial estoppel issue at the argument before the trial court on preliminary objections, but she only discussed there what happened procedurally to Udren in the federal case. See id. at 26-27 ("[Udren] begged and pleaded to get out of the case and we agreed. Here is their brief at Document 240 which says exactly the opposite of what [Udren's counsel] said today. I'll quote it: Thus, the claims also do not involve common questions or fact [sic] as Udren has nothing to do with the service of modification issue nor do any of the complex issues applied to these issues apply to the sole remaining claims against Udren.") (citing N.T. Status Conference, 10/31/2016, at 29) (emphasis in original). At argument, Ms. Glover never specifically raised or argued judicial estoppel, nor was it mentioned in her opposition brief to Udren's preliminary objections. See Cornerstone, 959 A.2d at 1270 (finding an issue is waived where the appellant "did not raise this argument in the brief it filed in opposition to [the] appellees' preliminary objections") (citations omitted).

from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." Black v. Labor Ready, Inc., 995 A.2d 875, 878 (Pa. Super. 2010) (citation, internal quotation marks, and brackets omitted). Thus, "judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; and (2) that the appellant's contention was 'successfully maintained' in that action." Id. (emphasis in original; citation and footnote omitted).[11] "Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by adopting whatever position suits the moment." Sunbeam Corporation v. Liberty Mutual Insurance Company, 781 A.2d 1189, 1192 (Pa. 2001) (citation omitted).

In the case sub judice, Ms. Glover elaborated on the purportedly inconsistent statements Udren made in the prior, federal Glover case, claiming that "[i]n connection with the Fed.R.Civ.P. 54(b) proceedings, Udren forcefully argued that the remaining 'claims are factually discrete claims which have nothing to do with the claims of wrongdoing asserted by Glover against Wells Fargo … [and those] claims [advanced in the federal

_____

[11] Our Supreme Court, however, has observed that "[w]hether successful maintenance of the prior inconsistent position of litigant is strictly necessary to implicate judicial estoppel in every case, or whether success should instead be treated as a factor favoring the doctrine's application, is the subject of some uncertainty." In re Adoption of S.A.J., 838 A.2d 616, 620 n.3 (Pa. 2003) (citations omitted).

action] relate to the servicing of [Ms.] Glover's loan and alleged wrongdoing with respect to a modification of her loan.'" Ms. Glover's Brief at 24 (citation to federal Glover docket omitted; emphasis and some brackets in original). Ms. Glover also insists that Udren asserted that "there were no factual allegations against it in the class action complaint after it filed the foreclosure complaint on behalf of WaMu[,]" and that Ms. Glover's "claims pertain solely to alleged fees demanded by Udren, whereas the claims against the Lender Defendants related to servicing issues and loan modifications occurring well after that time." Id. at 24, 25 (emphasis and citations omitted).

We would not find Udren's position in the federal action to be inconsistent with its position here. While Udren argued in federal Glover that the claims against it were different, and more limited, than the claims against the other defendants — mainly because Udren did not service the loan at issue — Ms. Glover does not point to any particular representation made by Udren regarding the attorney's fees paid to Wells Fargo and what the effect of any ruling on that subject would have on Udren.[12] As such, we would not view

_____

[12] Indeed, in its brief, Udren explains that "[b]ecause the remaining two claims against Udren were based on legal theories which Udren believed to be unique to Udren, namely, whether an attorney could be liable for violations under § 406 of Act 6 and whether an attorney could be liable under the UTPCPL for actions taken in the prosecution of a case, Udren moved to sever the claims against it from the claims against the Bank Defendants." Udren's Brief at 2-3 (citation omitted). It also states that Ms. Glover "eventually agreed to the same relief sought in the motion to sever in the Rule 54(b) Stipulation, which allowed her to pursue an appeal from the FDCPA and FCEUA claims she lost

Udren as "'playing fast and loose' with the judicial system by adopting whatever position suits the moment." Sunbeam, 781 A.2d at 1192 (citations omitted).[13] Thus, we would reject Ms. Glover's judicial estoppel argument.

Finally, Ms. Glover argues that "collateral estoppel does not apply as the federal judgment against Wells Fargo fails to satisfy two criteria for the application of Pennsylvania's collateral estoppel doctrine." Ms. Glover's Brief at 28 (unnecessary emphasis and capitalization omitted). First, she states that "the issue as decided by the federal courts with respect to Wells Fargo is not identical, under the collateral estoppel doctrine, to the Act 6 issue now presented against Udren[.]" Id. at 31 (unnecessary emphasis and capitalization omitted). Second, she claims that "lack of discovery prevented Ms. Glover from obtaining a full and fair opportunity to litigate her claims against Wells Fargo in the federal action[.]" Id. at 39 (unnecessary emphasis and capitalization omitted). We address each argument in turn.

> Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party,

_____

to Udren in the [f]ederal [c]ourt while pursuing the Act 6 claim in this [c]ourt." Id. at 21-22.

[13] While we do not delve deeply into the issue of whether Udren successfully maintained its position in the earlier action, we recognize that Udren ultimately withdrew its motion to sever and that Ms. Glover "voluntarily agreed to the identical relief sought in the motion to sever, i.e., that the action proceed separately against Udren." Udren's Brief at 23, 24.

to the prior action and must have had a full and fair opportunity to litigate the issue in question.

There is no requirement that there be an identity of parties in the two actions in order to invoke the bar. Collateral estoppel may be used as either a sword or shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action.

Collateral estoppel applies if four elements are present:

(1) An issue decided in a prior action is identical to the one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

Columbia Medical Group, Inc. v. Herring & Roll, P.C., 829 A.2d 1184, 1190-91 (Pa. Super. 2003) (internal citations omitted).

As mentioned above, Ms. Glover contends that "[e]lements one and four were not satisfied here." Ms. Glover's Brief at 29. With respect to the first element — pertaining to whether the prior issue is identical to the present issue — Ms. Glover argues that "the Act 6 question includes whether Udren charged, and ultimately collected, an illegal payment (directly or indirectly) that Ms. Glover made prior to Wells Fargo's acquisition of Ms. Glover's servicing rights." Id. at 34. According to Ms. Glover, "[t]his question is distinct from whether an illegal payment was made by Ms. Glover after Wells Fargo acquired the servicing rights." Id.

Despite this contention, in her earlier Memorandum of Law in Support of Opposition to Preliminary Objections, Ms. Glover had explained:

Here, as alleged, Ms. Glover … [was] charged attorneys' fees at the outset of the foreclosure action against them that did not reflect a reasonable rate for the services performed because they were not determined by an Article V court under a lodestar method as required. The fees demanded from Ms. Glover were paid by her original lender, WaMu, who immediately entered the net amount of the payment to Udren into Ms. Glover's file as a debt owed by Ms. Glover. WaMu sold this debt to Wells Fargo, and Wells Fargo demanded this sum from Ms. Glover as part of the closing of her loan modification agreement. Ms. Glover paid the fees.

Ms. Glover's Memorandum of Law in Support of Opposition to Preliminary Objections, 10/24/2016, at 2. See also Opposition to Preliminary Objections, 10/24/2016, at ¶ 5 ("Attorneys' fees that were earlier paid to Udren were demanded by Wells Fargo and Ms. Glover paid those fees.").

To begin with, because Ms. Glover did not raise this issue before the trial court, we deem it waived. See Pa.R.A.P. 302(a); Cornerstone, supra.

In any event, even if not waived, we would agree with Udren's reasoning that:

The issue in the prior case with respect to the Act 6 claim against Wells Fargo was whether Wells Fargo, in continuing to receive payments under the 2006 loan modification agreement between [Ms.] Glover and WaMu, and in a 2008 loan modification agreement between [Ms.] Glover and Wells Fargo, charged or was paid illegal fees under Act 6. That is the threshold issue [Ms.] Glover must prove in this case, inasmuch as for Udren to be found to have "collected" an illegal fee, that fee must have been charged by Wells Fargo and paid by [Ms.] Glover to Wells Fargo under [Ms.] Glover's theory of the case. Accordingly, if no such fee was ever charged or paid, Udren cannot be liable for "collecting" that fee. Thus, the issues are identical.

Udren's Brief at 17 (footnote and internal citation omitted).

In addition, Ms. Glover also states that the Act 6 claims in the two cases are not identical because "[i]n the federal case, the federal court's holding

- 22 -

related to a failure with respect to the requisite evidentiary showing under federal summary judgment standards … while the lower court here was required to analyze the case against Udren under Preliminary Objection standards, … which precluded affirmative defenses." Ms. Glover's Brief at 36.[14] Without any citation in support, Ms. Glover claims that "[c]ollateral estoppel does not apply when the burdens of proof in the two actions are significantly different." Id. at 37. Ms. Glover further avers that "the facts to be sought in discovery against Udren, once obtained, will likely fundamentally change the legal issue presented." Id. at 39.

In response, we concur with the trial court, which stated that it found "no support for [Ms.] Glover's argument that collateral estoppel is limited by the evidence underlying the first suit's final judgment. Whether a plaintiff can adduce sufficient evidence if given a second bite at the apple is not grounds to defeat the collateral estoppel effect of the judgment." TCO at 3. Additionally, we are persuaded by its observation that "[f]urther discovery directed at Udren related to its 'collection' of any money cannot defeat the Third Circuit's finding that Ms. Glover was not charged and did not pay any unlawful fees." Id. Accordingly, we agree with the trial court that the issues are identical, and Udren satisfied element one of the collateral estoppel doctrine.

_____

[14] Based on our review of the record, it appears that Ms. Glover did not argue below that Udren could not raise its collateral estoppel defense in preliminary objections.

Finally, with respect to element four — relating to whether Ms. Glover had a full and fair opportunity to litigate the issue in the prior action — she claims that she was not provided with such an opportunity "due to procedural rulings related to the federal magistrate's appointment of the special master." Ms. Glover's Brief at 39-40. She claims that a "pay-to-play system denied Ms. Glover a full and fair opportunity to litigate the issue of the legality of Wells Fargo['s] fee collection, especially where Ms. Glover had to commit to pay a special master twice that to-be-paid by [the other defendants]." Id. at 41.

We agree with the trial court that Ms. Glover's "perceived injustice in the federal district court's management of the case was extensively addressed by the Third Circuit[,]" and we likewise "decline to review the district court's case management because [Ms. Glover] has already availed herself of the proper appellate court for this issue." See TCO at 2-3; see also Glover, 629 Fed. Appx. at 337-41. As such, we conclude that Ms. Glover had a full and fair opportunity to litigate the prior action, and Udren met element four of the collateral estoppel doctrine. Thus, we affirm the trial court's order sustaining Udren's preliminary objections.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017

- 24 -